Violet DENELSBECK, o/b/o herself
and others similarly situated,
Respondents,

v.

WELLS FARGO & CO., a Delaware corporation, d/b/a Wells Fargo Bank, N.A., Petitioner, Appellant.

No. C8–02–594.

Supreme Court of Minnesota.

July 31, 2003.

Richard T. Thomson, David A. Harbeck, Lapp, Libra, Thomson, Stoebner & Pusch, Minneapolis, MN, for Appellant.

Edwin L. Sisam, Dorothy J. Buhr, Tammy P. Friedrichs, Sisam & Watje, Minneapolis, MN, for Respondent.

Joseph J. Witt, General Counsel, Edina, MN, for Amicus Curiae MN Bankers Assn.

## OPINION

ANDERSON, PAUL H., Justice.

Respondent Violet Denelsbeck brought this breach of contract action against appellant Wells Fargo Bank, N.A., alleging that Wells Fargo breached the terms of her retirement certificate of deposit. Denelsbeck contends that Wells Fargo failed to give her adequate notice that it was changing the 12.25% interest rate paid on her certificate to 4.6%. Concluding that Wells Fargo had provided adequate notice, the district court granted summary judgment to Wells Fargo. The court of appeals reversed the grant of summary judgment, concluding that "genuine issues of material fact [existed] regarding whether a substitute contract was formed and whether Wells Fargo provided notice as required by the contract." *Denelsbeck v. Wells Fargo & Co.*, No. C8–02–594, 2002 WL

31057013, at *1 (Minn.App. Sept. 17, 2002). We reverse.

On July 11, 1984, Violet Denelsbeck purchased a savings certificate for her Individual Retirement Account from Waseca Savings & Loan. The certificate was for 84 months, matured on July 11, 1991, and had an initial 12.25% interest rate. The certificate's renewal section provided for automatic renewal every seven years at the market rate in effect for market rate certificates with the same term on the date of renewal. The renewal section read as follows:

> Renewal Section: The accountholder agrees that this account shall be automatically renewed at the close of business on the initial maturity date shown above or on the maturity date of any renewal term at *a rate of interest equal to the rate in effect on Market Rate Certificates with the same term.* The accountholder agrees that automatic renewal shall take place unless (1) the accountholder withdraws the account balance within the seven day grace period referred to in Section 6 below or, (2) the accountholder receives written notice from the Association at least 15 days prior to any renewal date that this account shall not be renewed for this type of account. If the latter occurs, the account will be converted to a regular savings account at the Association's then current interest rate on regular savings accounts or the account may be renewed at a new interest rate for this type of account at the accountholders' option.

(Emphasis added.)

In her deposition, Denelsbeck testified that an employee of Waseca Savings & Loan Association named Mary told her when she bought the certificate that the interest rate would be "permanent" and that it would not change as long as Denelsbeck retained the certificate. It was not clear from Denelsbeck's testimony, however, whether Mary meant that the interest rate would be permanent only for the seven-year term of the certificate or for each successive renewal. Denelsbeck further testified that although she read the certificate and understood that Waseca Savings & Loan could change the interest rate if it gave her 15 days written notice, she "was given to understand it wasn't likely."

Through a series of transactions in the 1980s, Waseca Savings & Loan was merged into First Minnesota Savings Bank, F.S.B. Despite this change in ownership, Denelsbeck asserts that she did not have another conversation with a bank or savings association representative about her certificate until on or around December 4, 1990. Denelsbeck stated that at about that time she received a call from someone in the IRA Savings Department at First Minnesota who told her, "we can't pay 12 and a quarter." Denelsbeck testified she responded by saying "oh yes, you can, that's a fixed rate." Denelsbeck stated that the person then told her that he would check into it further.

That same month, December 1990, First Minnesota was acquired by Norwest Bank Minnesota, N.A. (Norwest). On December 18, 1990, the Retirement Services Department of Norwest sent a letter to Denelsbeck stating in relevant part:

> We are writing to confirm that the Retirement certificate that you opened at our former First Minnesota Waseca office has been transferred to our Edina branch office.

> The terms, conditions, and interest rate of your original certificate remains in effect until maturity, as is reflected on the enclosed replacement certificate.

> To avoid any confusion with your certificate, we ask that you please destroy your former certificate document.

The replacement document that accompanied Norwest's December 18 letter was on a First Minnesota form and was entitled "Rate Change or Internal Transfer Request/ Fixed Rate Retirement Savings Certificate Disclosure." At the top of the front page of the document, there was a notation that said, "Transferred from Waseca to Edina to have all accounts in same entity." Reading down the document, it first provided identifying information on Denelsbeck and then provided certain options from which to choose. Account numbers had been typed in one of the options that read:

I request that First Minnesota Saving Bank, F.S.B. transfer my existing Retirement Account Number(s)(A) [account number], * * * to a * * * Retirement Account Number [account number] with the rate and term as shown below in the New Account Summary.

There was a box next to the foregoing option and a line for the "Participant's Signature." On her copy of the replacement document, Denelsbeck had not signed on the signature line. Denelsbeck testified that she did not recall returning the replacement document to the bank, but instead she destroyed the original 1984 certificate as directed and kept the replacement document for her files. At the bottom of the replacement document under a section termed New Account Summary, the original terms of the document were restated as follows: original date of issuance 7/11/84, initial maturity date 7/11/91, initial term 84 months, and rate of earnings 12.25%.

The replacement document also had a number of information sections on the back and a statement at the top that read, "This Retirement Savings Certificate is Non–Transferrable and Non–Negotiable." The renewal section on the back of the document provided:

This account will be automatically renewed at the close of business on the Initial Maturity Date or on the maturity date or any Renewal Term unless (1) it is withdrawn within the 7 day period referred to in the Penalty Clause Section hereof, or (2) *at least 15 days prior to a maturity date, the Bank gives written notice to the participant that this account will not be renewed at the earnings rate set forth in the Earnings Section and/or for any other term(s) set forth in this certificate.* In such latter event, upon maturity the account will be renewed at such Rate of Earnings and/or such different terms as set forth in said written notice.

(Emphasis added.) Denelsbeck testified at her deposition that it was her understanding the replacement document only changed the account number and did not change the terms of her original certificate purchased in 1984.

On or about July 3, 1991, shortly before Denelsbeck's certificate matured, Norwest sent a letter to all savings certificate customers acquired from First Minnesota. The letter provided in relevant part that:

Since the merger, we have been considering ways to more efficiently serve you. One way we feel we can do that is to standardize all accounts according to Norwest's operations. Therefore, *effective August 16, 1991 your Savings Certificate(s) will be converted to the Norwest operations system.*

Please be assured that the interest rate and the terms of your current certificate will not be changed. There are, however, some operational changes that become effective with the conversion.

(Emphasis in original.) One of the changes noted in the letter was that effective upon renewal, "[t]he savings certificate will be subject to Norwest's terms

and conditions. (See enclosure.)" Toward the end of the letter, it was reiterated that "[a]s stated earlier, these changes do not affect interest rates or maturity dates for certificates you already hold, *until renewal.*" (Emphasis added.) A Norwest terms and conditions pamphlet was also enclosed with the letter. On page 15 of this 32–page pamphlet under the "Fixed Rate Statement Certificate Deposits" section is the following provision:

> Automatic renewal. My deposit will be renewed at maturity unless I notify you otherwise. It will be renewed for the same term. The renewal rate will be your rate in effect on the maturity date for a new deposit of the same term and amount.

Denelsbeck stated that she did not recall receiving this letter or enclosure from Norwest. Nevertheless, Denelsbeck acknowledges that whether the letter or enclosure were sent is not an issue in this case.

On July 11, 1991, Norwest renewed Denelsbeck's certificate for another seven years at an interest rate of 12.25%. At the time, the market rate of interest for new certificates was somewhere between 7 and 9½%. Denelsbeck's certificate was up for renewal just after the purchase of First Minnesota by Norwest and the conversion of all the First Minnesota accounts. Wells Fargo, Norwest's successor, asserts that at that time, Norwest was unable to separate those accounts that automatically renewed at the market rate but not below a certain floor from other market rate certificate accounts. Therefore, to avoid the possibility of mistakenly penalizing customers, Wells Fargo asserts that Norwest renewed all accounts at their old rate because it knew that the old rate would be above whatever floor-limit was required by a certificate.

Denelsbeck stated that in December 1997, approximately six months before her certificate was to come due for the second time, she called Norwest to confirm that her certificate was going to renew at the 12.25% interest rate. Denelsbeck said that someone named Lisa answered the phone and told her that her certificate would roll over at the same rate of interest for another term if she did not move it. When Wells Fargo asked Denelsbeck in her deposition about handwritten notes on her copy of her July 30, 1997 bank statement, Denelsbeck stated that she made notes of her conversation with Lisa contemporaneously with the conversation. The handwritten note on the statement included the date and time of the call and the notation, "Will renew at same rate of interest and will automatically renew if I don't touch it."

When Denelsbeck received her 1997 bank statement from Norwest, it included in the middle of the first page in bold, upper case print the following:

> The enclosed IRA disclosure and individual retirement plan is an amendment of your individual retirement plan. Many of the changes are necessary to comply with recent tax law changes. This amendment will be effective unless you notify your banker in writing within 30 days that you do not consent to this amendment. The changes include increased spousal contribution limits, increased threshold income levels and active participant rules for deductible contributions, new withdrawal reasons not subject to the 10% IRS premature distribution penalty and an explanation of how distributions to spousal beneficiaries subject to marital and community property laws will be handled. Questions as to how these changes affect you should be directed to your tax advisor.

Wells Fargo contends that included with Denelsbeck's bank statement was a pamphlet entitled "IRA Disclosure and Individual Retirement Plan." On the first page of this 47–page pamphlet was a paragraph stating "[t]his disclosure statement is only a brief summary of the Bank's IRA program. If there is any inconsistency between this summary and the plan documents, the plan documents control." On page 25 under a section entitled "Time Deposit Investments," the pamphlet provided that

> I will be able to change from one type of investment to another on my investment's maturity date or within seven calendar days after it. If I do not change my type of investment, you will automatically renew it for the same period.

> My renewed investment will be on terms as close to those of my original investment as possible except that the interest rate will be set at the rate you are currently offering on that type of investment.

In addition to the foregoing, there was a section on the back of the first page of the bank statement that provided:

> Renewal Policies. If your retirement time account is automatically renewable, at maturity it will automatically renew for a like term, unless, prior to maturity, the Bank notifies you that the Bank will not renew your account. You will have seven calendar days after the maturity date to withdraw funds without penalty.

Denelsbeck acknowledged receiving and having read her December 31, 1997 bank statement. She does not specifically recall receiving the pamphlet enclosed with her bank statement, but she conceded that she likely received it.

Shortly before the second renewal of Denelsbeck's certificate on July 11, 1998,

Norwest sent Denelsbeck a "Time Account Maturity Notice" which provided:

> The above account, if renewed, will renew for a like term and mature on 7/11/05. The new rate will be per the terms of the account unless payment is requested.

Wells Fargo contends that two "stuffers" were included in the same envelope with the maturity notice. The first stuffer was entitled "Terms for All Time Accounts" and described the various terms and conditions governing time accounts held with Norwest. The stuffer provided in relevant part:

> If your time account is automatically renewable, at maturity it will automatically renew for a like term, unless, prior to maturity, the Bank notifies you that the Bank will not renew your time account. You will have seven calendar days after the maturity date to withdraw funds without penalty.

The second stuffer was entitled "How to Obtain Current Interest Rate Information" and provided in relevant part:

> The Interest Rate and Annual Percentage Yield that will be paid on your certificate upon renewal have not yet been determined. You may find out what the NEW savings certificate Annual Percentage Yield will be by calling the telephone number listed below on the date your savings certificate matures or first business day thereafter.

On July 11, 1998, Norwest renewed Denelsbeck's certificate at a 4.6% interest rate, the then-current market rate. Denelsbeck stated that she was unaware that her certificate was renewed at 4.6%, and not 12.25%, until she received her December 31, 1998 statement. Sometime after Denelsbeck's certificate renewed in 1998, Norwest Bank merged with and became part of Wells Fargo.

Denelsbeck brought suit against Wells Fargo alleging that Wells Fargo's predecessor bank, Norwest, was in breach of contract when it renewed her certificate at an interest rate of 4.6%, not 12.25% as she expected. After receiving cross motions for summary judgment, the district court concluded that Wells Fargo had provided adequate notice to Denelsbeck that the rate of her certificate might change and granted summary judgment to Wells Fargo. On appeal, the court of appeals reversed the grant of summary judgment, concluding that "genuine issues of material fact [existed] regarding whether a substitute contract was formed and whether Wells Fargo provided notice as required by the contract." *Denelsbeck*, 2002 WL 31057013, at *1. Wells Fargo petitioned for review, which we granted.

## I.

In its appeal, Wells Fargo contends that the two stuffers provided with the maturity notice, along with the prior notices,[1] were sufficient to notify Denelsbeck that in 1998 her certificate would renew at the then-current market rate. Denelsbeck does not contest that the stuffers might have been enclosed with her bank statement or that the other pamphlets were enclosed with various documents mailed to her. However, she asserts that the stuffers and other notices did not adequately inform her that her certificate would not renew at a 12.25% interest rate.

Summary judgment is proper when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. In reviewing a summary judgment motion, we must "determine whether any issues of material fact exist and whether the trial court erred in its application of the law." *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371 (Minn.1995) (citing *Offerdahl v. Univ. of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988)). In doing so, we view the evidence in the light most favorable to the nonmoving party. *Id.* at 371.

In determining whether summary judgment was proper, we must first identify the disputed issues. In this case, the parties are contesting (1) whether the replacement document that accompanied Norwest's December 18, 1990 letter to Denelsbeck represented a substitute contract, and (2) whether Wells Fargo provided Denelsbeck with adequate notice that her retirement certificate would renew at the then-current market rate. While preserving the issue whether the replacement document represented a substitute contract, Wells Fargo concentrates its arguments in this appeal on whether the adequacy of notice is a question of fact or law and whether notice was adequate assuming a substitute contract was formed. We will begin our review by examining the issue of notice, assuming that the replacement document formed a substitute contract. We do so because the issue of whether a substitute contract was formed is moot[2] if we conclude that notice was adequate.

---

1. In addition to the two stuffers, Wells Fargo contends that it provided notice to Denelsbeck that her certificate would renew in 1998 at the market rate of interest when it sent her (1) the 1991 form letter that provided that upon renewal her certificate would be subject to Norwest's terms and conditions and a pamphlet outlining those terms and conditions, and (2) the IRA Disclosure and Individual

Retirement Plan pamphlet with her December 31, 1997 statement.

2. The terms of the original certificate provided for an automatic renewal at the market rate of interest. If the replacement document was not a substitute contract and the original certificate terms apply, Wells Fargo would not be required to provide notice to Denels-

Wells Fargo contends that the adequacy of notice is a question of law and that the court of appeals erred when it ruled that the question of adequacy is one of fact to be decided by the jury.[3] In determining whether the adequacy of a notice is a question of law or fact, we must first examine the method by which notice is required. In this case, there are two notice requirements that Wells Fargo must meet. First, federal regulations require that 30 days before maturity Wells Fargo must make specific disclosures to account holders with automatically renewable time accounts with a term longer than one year. Truth in Savings, 12 C.F.R. §§ 230.4(b), 230.5(b)(1) (2003). Second, at least 15 days before the maturity date, Wells Fargo must give Denelsbeck written notice that the terms of her certificate will change. This second requirement is derived from the substitute contract Denelsbeck may have had with Norwest. A contract was formed between Denelsbeck and Waseca Savings & Loan when Denelsbeck purchased her original certificate in 1984, see *State v. Northwestern Nat'l Bank of Minneapolis*, 219 Minn. 471, 482, 18 N.W.2d 569, 575 (1945) (stating a contract

exists between bank and those depositing funds in the bank), and a substitute contract was arguably formed when Norwest sent Denelsbeck the replacement document in December 1990.

■■■ To evaluate whether these two notice requirements were met requires interpreting the federal regulations and the language of Denelsbeck's potential contract with Norwest. The construction of a statute or a regulation is a question of law to be determined by the court. *St. Otto's Home v. Minn. Dept. of Human Servs.*, 437 N.W.2d 35, 39 (Minn.1989). The construction and effect of a contract is also a question of law unless the contract is ambiguous. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979). "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn.1997). The determination of whether a contract is ambiguous is a question of law, *id.* at 515, but the interpretation of an ambiguous contract is a question of fact for the jury. *Turner*, 276 N.W.2d at 66. If a contract is

---

beck that her certificate would renew at the market rate of interest currently in effect.

**3.** The holding of the court of appeals on the issue of notice is not clear. In the introductory paragraphs of the opinion, the court states "[b]ecause Denelsbeck raises genuine issues of material fact regarding whether a substitute contract was formed *and whether Wells Fargo provided notice as required by the contract*, we reverse the grant of summary judgment on this issue and remand." *Denelsbeck*, 2002 WL 31057013, at *1 (emphasis added). With this statement, the court could be stating, as Wells Fargo contends, that the issues of whether the notice provided to Denelsbeck was adequate and whether a substitute contract was formed are both questions of fact that preclude summary judgment. Another interpretation is that the court is stating that the question of whether notice was given to

Denelsbeck, and not the adequacy of the notice, is a question of fact. This second interpretation is more consistent with the court of appeals' later comments where the court said:

> We are troubled as well by the question of adequacy of the notice required by the contract. *If* a jury finds that the First Minnesota notice functions as a substitute contract, the bank notice of impending maturity, containing only a non-specific reference to a method for determining market rates on the maturity date, may be inadequate under the language of the First Minnesota notice, which required a 15 day notice that the certificate will not be renewed at the earnings rate set forth on the face of the certificate.

*Id.* at *2 (emphasis added). This later comment by the court indicates that the court did not reach the issue of adequacy of notice.

unambiguous, the "contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh." *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999) (footnotes omitted).

█ As to the federal regulations, the adequacy of the notice provided by Wells Fargo depends on whether Wells Fargo complied with the detailed requirements of the federal regulations. Because determining compliance with a regulation requires a construction of that regulation, which is a question of law, the determination of the adequacy of the notice provided by Wells Fargo under the federal regulations is a question of law to be determined by the court and could, therefore, be properly addressed in summary judgment.

█ As for Denelsbeck's contract with Norwest, Wells Fargo contends that the notice it provided complied with the federal regulations and, therefore, was also sufficient under the contract. Denelsbeck asserts that the replacement document requires that she be informed that her retirement certificate would not renew at the specific interest rate of 12.25% and any notice she received failed to provide her with that information. We conclude this dispute between the parties is not due to the contract being ambiguous, but rather is due to differing interpretations of the notice required under the contract. A determination of whether the notice Wells Fargo provided to Denelsbeck complies with the terms of the contract involves the construction and effect of the contract, which is also a question of law to be determined by the court and could also be addressed via summary judgment.

## II.

Having determined that, in this case, the issue of notice does not involve a dispute as to genuine issues of material fact but rather is a question of law for which summary judgment is appropriate, we can proceed to decide the notice issue based on the record before us. In doing so, we must determine whether the district court erred in its application of the law. We begin our analysis by examining the applicable federal regulations.

Regulation DD provides that the following disclosures must be made 30 days before maturity for time accounts with maturities longer than one year that automatically renew: (1) rate information, (2) compounding and crediting, (3) balance information, (4) fees, (5) transaction limitations, (6) features of time accounts, and (7) bonuses. 12 C.F.R. §§ 230.4(b), 230.5(b)(1). The regulations further provide that if the new interest rate and annual percentage yield are unknown when the disclosures are made, the disclosure should "state that those rates have not yet been determined, the date when they will be determined, and a telephone number consumers may call to obtain [the new] interest rate and the annual percentage yield." 12 C.F.R. § 230.5(b)(1).

█ Wells Fargo asserts that more than 30 days before the July 11, 1998 maturity date, Denelsbeck received three documents from Norwest. The first document entitled "Time Account Maturity Notice" provided that Denelsbeck's certificate would renew for a like term and "[t]he new rate will be per the terms of the account." The second document entitled "How to Obtain Current Interest Rate Information" provided that the interest rate to be paid on the certificate had not yet been determined, and the new rate could be obtained by calling the telephone number listed. The third document entitled "Terms for All Time Accounts" provided information about the minimum balance required, deposits and withdrawals of

principal, withdrawal of interest prior to maturity, renewal policies, interest compounding and crediting, the method used to calculate earned interest, fixed-rate accounts, variable-rate accounts, and early withdrawal penalties. Denelsbeck does not contest that she received these notices or that they complied with the federal regulations. Our review of these documents further indicates that they are in compliance with the requirements of the federal regulations. Therefore, we conclude the notice provided by Wells Fargo to Denelsbeck was adequate under the federal regulations.

### III.

As previously noted, we cannot end our analysis with the conclusion that Wells Fargo's notice to Denelsbeck was adequate under the federal regulations. To be entitled to summary judgment, Wells Fargo must have also complied with any notice requirements contained in the contract between Wells Fargo and Denelsbeck as evidenced by the replacement document. Under the replacement document, Denelsbeck's certificate would automatically renew unless at least 15 days before maturity, Wells Fargo gave her written notice that the certificate would "not be renewed at the earnings rate set forth in the Earnings Section and/or for any other term(s) set forth in this certificate." The replacement document further provides that if written notice is provided, the certificate "will be renewed at such Rate of Earnings and/or such different terms as set forth in said written notice."

Wells Fargo contends that by complying with the federal regulations, it has also met its contract obligations under the replacement document. Denelsbeck asserts that compliance with the federal regulations does not relieve Wells Fargo from compliance with the notice obligations un-

der the contract. We agree with Denelsbeck on this point. While it is true that parties may not contract for less notice than that required by a federal regulation, the parties are free to contract for more stringent notice than those contained in the federal regulations. *See Indep. Sch. Dist. No. 877 v. Loberg Plumbing and Heating Co.*, 266 Minn. 426, 434, 123 N.W.2d 793, 799 (1963). For this reason, we cannot say that compliance with the federal regulations is prima facie evidence of compliance with the terms of a contract. Rather, we must proceed to examine the notice required under the contract to determine what requirements Wells Fargo must meet in order to comply with the contract.

We begin this part of our analysis by examining the notice requirement stated in the replacement document: "at least 15 days prior to a maturity date, the Bank [must] give[ ] written notice to the participant that this account will not be renewed at the earnings rate set forth in the Earnings Section and/or for any other term(s) set forth in this certificate." The focus of the debate between the two parties is the extent of the notice required by these words. Denelsbeck asserts that Wells Fargo must specifically state in its notice that her certificate would not renew at 12.25%. Wells Fargo contends that informing Denelsbeck that the interest rate on her new certificate could not be determined yet and that she should call a listed telephone number to obtain the new rate, together with the other notices provided, was sufficient to give Denelsbeck notice that her certificate would renew at the then-current market rate, not at 12.25%. Here, we agree with Wells Fargo.

Over 30 days before maturity, Wells Fargo sent Denelsbeck a "Time Account Maturity Notice" that provided that her certificate would renew "for a like term

and * * * [t]he new rate will be per the terms of the account." When determining what is meant by the phrase "the terms of the account," we first look at the replacement document itself. The replacement document lists the terms of the account as: original maturity date 7/11/84, initial maturity date 7/11/91, initial term 84 months, and rate of earnings 12.25%. In an accompanying letter, Norwest informed Denelsbeck that "[t]he terms, conditions, and interest rate of your original certificate remains in effect *until maturity,* as is reflected on the enclosed replacement certificate." (Emphasis added.) Thus, at this point, the terms of the account dictated that the interest rate on the certificate should be 12.25%. Subsequently, however, Norwest and Wells Fargo sent Denelsbeck numerous letters, statements, and "stuffers" that consistently told her that the terms of her account had changed and that her certificate would now renew at the market rate of interest upon renewal.[4]

In the letter sent in 1991, Norwest informed Denelsbeck that while the conversion to Norwest would not change the current rate of interest on her certificate, upon renewal her certificate would be subject to Norwest's terms and conditions. The pamphlet included with the letter outlined Norwest's terms and conditions and included the statement that "[t]he renewal

rate will be [Norwest's] rate in effect on the maturity date for a new deposit of the same term and amount." Included with Denelsbeck's December 31, 1997 bank statement was an IRA Disclosure and Individual Retirement Plan pamphlet that provided in relevant part that her investment would renew at terms as close to those of her original investment as possible, except the interest rate would be set at the rate currently being offered on that type of investment. Over 30 days before her certificate renewed in 1998, Wells Fargo sent Denelsbeck a statement, along with the time account maturity notice, entitled "How to Obtain Current Interest Rate Information," that told her that her interest rate could not be determined and she must call the telephone number listed to obtain her new rate.

■ These documents, along with a number of other stuffers provided with the various letters and statements sent to Denelsbeck that we will not discuss in detail here, consistently informed her that the terms of her account had changed and that, upon renewal, the interest rate on her certificate would be the current market rate.[5] Therefore, we conclude that the notice provided by Wells Fargo to Denelsbeck was adequate as a matter of law

---

**4.** Denelsbeck does not contest that she received the various documents and stuffers discussed from Norwest and Wells Fargo.

**5.** The dissent contends that the "generic stuffers" sent to Denelsbeck were not specific enough under the terms of the contract to inform her that her certificate was going to renew at the then-current market rate of return, and not the 12.25% rate. The dissent then suggests examples of verbiage that Norwest could have "easily" included in its notice statement which would have made it clear to Denelsbeck that her interest rate was going to change. While we acknowledge that Norwest could have done a better job of informing

Denelsbeck that the interest rate on her certificate was going to change and that it is tempting to articulate how Norwest could have done so, articulating a better form of notice is not the issue before this court. Our job is to take the facts of the case and determine under the law whether adequate notice was given. While the dissent takes issue with the use of stuffers, we must look at the big picture as compared to the dissent's piece-meal approach. When we do so, it is clear that each of the stuffers sent to Denelsbeck consistently informed her that her certificate would automatically renew at the market rate in effect on the date of the renewal.

when viewed in the context of the contract requirements.

In reaching the foregoing conclusion, we note that here, even though we have concluded that notice under the federal regulations was sufficient to meet the contract notice requirements, we have come to this conclusion without reaching the issue whether compliance with the federal notice requirements raises a presumption of compliance with the terms of a separate contract. Further, because we hold that notice was adequate under the unambiguous language of the replacement document, it is not necessary for us to address the question whether a substitute contract was formed by the replacement document.

Because we conclude that as a matter of law notice was adequate under both the federal regulations and the contract between Wells Fargo and Denelsbeck, we hold that summary judgment for Wells Fargo is proper. Accordingly, we reverse the court of appeals and reinstate the district court's grant of summary judgment.

Reversed.

GILBERT, J., took no part in the consideration or decision of this case.

## DISSENT

PAGE, Justice, dissenting.

I respectfully dissent. The contract between Denelsbeck and Wells Fargo, as evidenced by the replacement document, provides that "at least 15 days prior to a maturity date, the Bank [must] give[ ] written notice to the participant that this account will not be renewed at the earnings rate set forth in the Earnings Section and/or for any other term(s) set forth in this certificate." The replacement document further provides that the rate of earnings on the account was 12.25%. Applying the plain and ordinary meaning to the contract language, as we must if we conclude as we have here that the contract is unambiguous, this language requires that Wells Fargo specifically inform Denelsbeck that, upon renewal, her retirement certificate would not renew at 12.25%. Wells Fargo could have accomplished this task easily by including a statement with the Time Account Maturity Notice that "this account will not renew at the 12.25% interest rate" or that "this account will renew at the market rate currently in effect on the renewal date." Instead, Wells Fargo sends a generic "stuffer" that states that the interest rate has not yet been determined and provides a telephone number to call to obtain the new rate.

The court contends that this generic stuffer provided adequate notice to Denelsbeck that her certificate was going to renew at an interest rate other than the 12.25% stated in the replacement document. I disagree. This stuffer does not specifically tell Denelsbeck that her certificate is not going to renew at 12.25% as required by the contract language. Nor does the stuffer even indicate that it relates to Denelsbeck's retirement certificate. For that reason, I cannot conclude that this stuffer adequately informed Denelsbeck that her certificate would renew at the then-current market rate of return instead of 12.25%.

For the same reason, I also disagree with the court's conclusion that the multi-paged pamphlets included with customer letters and bank statements sent to Denelsbeck adequately informed her that the terms of her certificate had changed and that her certificate would renew at the then-current market rate of return. As with the stuffer included in the Time Account Maturity Notice, these pamphlets are generic in nature and did not specifically inform Denelsbeck that her account

would not renew at 12.25% as required by the replacement document.

Wells Fargo's reliance on these generic stuffers and pamphlets to provide notice to Denelsbeck that her certificate would renew at the current market rate is made more objectionable by the contradictory messages Denelsbeck received from Wells Fargo and its predecessors. When she first took out her certificate in 1984, Denelsbeck testified that she was told by Mary at the bank that the interest rate of 12.25% would be "permanent." Then, shortly before Denelsbeck's certificate came up for renewal in 1991, Denelsbeck received a call from a young man at the bank who told her that her certificate would not renew at 12.25%. However, six months later Norwest did renew her certificate at 12.25%, even though interest rates were between seven and nine and one-half percent at that time. Shortly before her certificate came up for renewal again in 1998, Denelsbeck testified that she called Norwest and was told by Lisa that her interest rate on renewal would not change as long as she did not remove her funds. However, upon renewal, Norwest renewed her certificate at the then-current market rate of 4.6%.

For the above stated reasons, I conclude that Wells Fargo did not provide adequate notice under the contract as evidenced by the replacement document that Denelsbeck's certificate would not renew at the 12.25%. Accordingly, I would affirm the court of appeals' reversal of the district court's grant of summary judgment and remand to the district court to determine whether the replacement document represented a substitute contract.