*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1004**

Randy Lundgren,
Appellant,

vs.

Diane Cash,
Respondent.

**Filed July 27, 2015
Affirmed
Reyes, Judge**

Crow Wing County District Court
File No. 18CV124441

Peter Radosevich, Radosevich Law Office, Esko, Minnesota; and

Adrienne Pearson, Pearson Law, Duluth, Minnesota (for appellant)

Neil C. Franz, Christopher A. Jensen, Franz Hultgren Evenson, P.A., St. Cloud, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Reilly, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

On appeal in this contract dispute, appellant Randy Lundgren argues that (1) the district court erred in admitting parol evidence to interpret the parties' contract and (2) the district court erred in finding that appellant breached the contract. We affirm.

**FACTS**

Appellant is the previous owner of property located in Crosby. During his ownership, appellant amassed multiple encumbrances on the property, and in September 2009, the Crow Wing County Auditor's Office executed a certificate of forfeiture transferring the property to the State of Minnesota to satisfy unpaid property taxes, subject to a right of redemption. In November 2009, appellant's creditor, CACH, LLC, filed a lien on the property in the amount of $6,534.14.

On February 16, 2010, appellant and respondent Diane Cash executed a "Letter of Agreement" (the Agreement) stating that the property would be conveyed to respondent for $42,000, subject to a number of conditions. The $42,000 purchase price was split into two payments: an initial $20,000 payment advanced by respondent to satisfy the property's previous debts and $22,000 in payments to be made over the course of 18 months. The specific language reads as follows:

> [Respondent] has agreed to purchase and [appellant] has agreed to sell the property for a sum of $42,000. [Respondent] will advance funds as necessary to provide relief of the back taxes and the [judgment] to CACH, LLC that is currently recorded on the property. . . .
>
> Upon successful satisfaction of these debts and the availability of a clear title for the property from Crow Wing County, [appellant] will issue a Quit Claim Deed to [respondent] for the above property. [Respondent] will, upon execution of the Quit Claim Deed, provide [appellant] with $20,000 cash less the amounts advanced to clear the title and provide relief from future [judgments] as listed in the above paragraph . . . .

> The balance of $22,000 will be paid to [appellant] over a period of 18 months at 0% interest. . . . This will be a personal note between [appellant] and [respondent].

The Agreement also states that appellant had secured a "new purchaser." Respondent agreed to resell the property to the "new purchaser" in a contract for deed at a higher price, with payments from the "new purchaser" to respondent occurring "over a substantially longer period." The Agreement further states that "[i]n the event that the new purchaser defaults before the full payment [by respondent] of $42,000 is made to [appellant], [appellant] and [respondent] agree to renegotiate the terms of the personal note." The "new purchaser" was later identified at trial as Audrey Corey.

After the Agreement was executed, respondent made a number of payments: $4,142.63 to Crow Wing County to satisfy appellant's tax debt and to exercise appellant's right of redemption; $3,000 to CACH, LLC to satisfy its judgment lien against the property; and $2,555 to appellant directly. On April 30, 2010, appellant executed a quitclaim deed conveying the property to respondent. On that same day, respondent executed a contract for deed to convey the property to Corey. At no time during the April 30, 2010 conveyances did appellant provide respondent with clear title to the property. This obligation was eventually satisfied on July 26, 2011, when appellant provided respondent with two mortgage satisfactions.

In 2011, problems occurred with Corey's payments. Starting in March 2011, Corey's payments were late and sporadic, and after July 6, 2011, respondent stopped receiving payments altogether. At trial, both parties presented different versions as to what happened after Corey's default. Appellant testified that he had ongoing discussions

3

with respondent about trying to resolve the problems with the property. Respondent testified that appellant refused to renegotiate and that any discussions regarding renegotiation were always one-sided. Respondent submitted a number of letters corroborating her version of events. The district court found respondent's testimony credible.

As previously stated, respondent did not receive mortgage satisfactions until July 26, 2011. Having received these satisfactions, respondent paid appellant $10,307.37 on August 15, 2011. Respondent eventually sold the property to a new buyer in December 2011. Appellant commenced this action and respondent counterclaimed, alleging that appellant breached the contract. Following a court trial, the district court found that appellant breached the contract and dismissed his claims with prejudice. Posttrial proceedings followed, generating a judgment nunc pro tunc. Those proceedings are not at issue and this appeal followed.

## D E C I S I O N

Appellant argues that the district court erred by (1) admitting parol evidence to interpret the Agreement and (2) finding that appellant breached the contract. The district court has discretion to grant a new trial and its decision will not be disturbed absent a clear abuse of discretion. *Halla Nursery, Inc. v. Baumann-Furrie & Co.*, 454 N.W.2d 905, 910 (Minn. 1990). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01.

**I.     The district court did not err by admitting parol evidence to interpret the contract because the contract is incomplete.**

Appellant first argues that the district court, when addressing whether there was a breach of the Agreement, should not have considered testimony and documentation regarding respondent's contract with Corey. Appellant's argument is based on the parol evidence rule, which "prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing." *See Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003) (quotation omitted). However, when "a written agreement *is* ambiguous or incomplete, evidence of oral agreements tending to establish the intent of the parties is admissible." *Id*. (emphasis added) (quotation omitted). Therefore, we must first determine whether the Agreement was "ambiguous or incomplete." *See id*.

**A.     Ambiguous**

"Whether a contract is ambiguous is a question of law that we review de novo." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010). A district court's determination of the meaning of an ambiguous contractual provision is a finding of fact which we review for clear error. *Trondson v. Janikula*, 458 N.W.2d 679, 682 (Minn. 1990). "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Denelsbeck v. Wells Fargo & Co*., 666 N.W.2d 339, 346 (Minn. 2003) (quotation omitted).

The district court found that the Agreement was ambiguous because it could not determine if the Agreement was an agreement for financing or for sale and could not ascertain respondent's role in the transaction. Due to this lack of clarity, the district court found it necessary to examine extrinsic evidence related to the parties' agreement with Corey, the future purchaser of the property.

But a general lack of clarity is not the standard for determining whether a contract is ambiguous. Instead, courts must determine whether, "based upon its language alone," a contract "is reasonably susceptible of more than one interpretation." *Id.* (quotation omitted). It is true that the Agreement contains references to both financing and sale. But neither the district court nor respondent cites any caselaw supporting the notion that an agreement is ambiguous when it contains both financing and sale elements. And neither the district court nor respondent offer more than one reasonable interpretation. Instead, the only reasonable interpretation of the Agreement is that it provides for the sale of the property, subject to a number of conditions. One of those conditions is that respondent will provide funds to clear back taxes and lien judgments from the property. The Agreement makes this arrangement clear when it states, under the heading "Financial Agreement," that "[respondent] has agreed to purchase and [appellant] has agreed to sell the property for a sum of $42,000. [Respondent] will advance funds as necessary to provide relief of the back taxes and the [judgement] to CACH, LLC that is currently recorded on the property." Despite containing both financing and sale elements, these sentences are not inconsistent and instead describe a sale of property in which a portion of the funds will be advanced to satisfy previous debts. *Cf. Wenner v. Gulf Oil Corp.*,

6

264 N.W.2d 374, 383-84 (Minn. 1978) (concluding that a contract's contradictory clauses which first provided a warranty and then disclaimed any warranties "cannot be reasonably reconciled with one another").  We fail to see how such language could be "reasonably susceptible of more than one interpretation."  *See Denelsbeck*, 666 N.W.2d at 346 (quotation omitted).

### B.    Incomplete

Although we conclude that the Agreement is unambiguous, parol evidence may still be introduced if the Agreement is incomplete or not integrated.  "[W]here a written agreement is ambiguous or incomplete, evidence of oral agreements tending to establish the intent of the parties is admissible."  *Alpha Real Estate Co.*, 664 N.W.2d at 312 (quotation omitted).   "If it appears from the circumstances surrounding the case that the parties did not intend the agreement to be a complete integration, then parol evidence can be used to prove the existence of a separate consistent oral agreement."  *Id.*  This has also been referred to as the "incomplete contract" exception to the parol-evidence rule, *see Bussard v. Coll. of St. Thomas*, *Inc.*, 294 Minn. 215, 224, 200 N.W.2d 155, 161 (1972), and has been recognized since 1893, when the supreme court stated:

> It is always competent to prove by parol [evidence] the existence of any separate oral agreement as to any matter on which the document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them.

*Phoenix Publ'g Co., v. Riverside Clothing Co.*, 54 Minn. 205, 206, 55 N.W. 912, 912 (1893).  Notably, the determination of whether a contract is fully integrated "is not made

solely by an inspection of the writing itself . . . for the writing must be read in light of the situation of the parties, the subject matter and purposes of the transaction, and like attendant circumstances." *Bussard*, 294 Minn. at 224, 200 N.W.2d at 161. This analysis has been referred to as "a common-sense reading." *Id*. at 225, 200 N.W.2d at 161.

The Agreement is incomplete because it is silent with regard to a key aspect of the contract, the role of the "new purchaser." Despite spanning just over one page, the Agreement references the new purchaser five different times. In addition, the Agreement specifically references another contract between respondent and the new purchaser that would occur upon execution of the Agreement. The entire renegotiation clause is based upon the new purchaser defaulting on the then-unsigned contract for deed under which respondent would convey property to Corey. And yet, the Agreement is silent on how the new purchaser could default and thus trigger the renegotiation clause. In fact, the new purchaser is not even named.[1] In light of these circumstances, the Agreement is incomplete and the district court did not err in admitting parol evidence relating to the then future agreement with Corey, the new purchaser.

---

[1] In *Cers v. Schmitz*, No. C5-01-882, 2002 WL 47784, at *4 (Minn. App. Jan. 15, 2002), *review denied* (Minn. Mar. 19, 2002), we concluded that extrinsic evidence was admissible under the incomplete-contract exception where: (1) neither party was represented by counsel; (2) the written portion of the agreement dealt solely with financial terms; (3) the alleged oral terms supplemented the written terms; (4) the parties' intended negotiations focused on the alleged oral terms; and (5) the written agreement did not contain an integration or a merger clause. Here, every factor except number four is present. While unpublished cases are not precedential, *see* Minn. Stat. § 480A.08, subd. 3(c) (2014), the lack of published caselaw on the incomplete-contract exception makes this analysis more persuasive.

**II. The district court's finding that appellant breached the contract was not clearly erroneous.**

"Whether an act or omission constitutes a material breach of a contract is a fact question." *Sitek v. Striker*, 764 N.W.2d 585, 593 (Minn. App. 2009), *review denied* (Minn. July 22, 2009). We review a district court's factual findings for clear error. *Rasmussen v. Two Harbors Fish Co.,* 832 N.W.2d 790, 797 (Minn. 2013) "The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted). A condition precedent is "any fact or event, subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises under the contract." *Nat'l City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co*., 447 N.W.2d 171, 176 (Minn. 1989).

Appellant argues that the district court committed clear error when it found that appellant materially breached the terms of the Agreement by failing to renegotiate with respondent once Corey defaulted. Appellant makes two general arguments: (1) that he actually did attempt to renegotiate and (2) that respondent breached the Agreement prior to any breach by appellant.

**A.   Appellant's breach**

Appellant argues that the district court clearly erred when it found that he made no effort to renegotiate after Corey's default. "When determining whether findings are clearly erroneous, the appellate court views the record in the light most favorable to the

9

[district] court's findings." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). To successfully challenge a district court's findings of fact, "the party challenging the findings must show that despite viewing that evidence in the light most favorable to the [district] court's findings . . . , the record still requires the definite and firm conviction that a mistake was made." *Id*. at 474.

The only evidence supporting appellant's claim that he attempted to renegotiate is his own testimony. The district court did not find this testimony credible. In contrast, respondent testified that she made a number of attempts at renegotiation, offered several letters into evidence corroborating this testimony, and further stated that she did not receive any response from appellant. The district court found respondent's testimony credible. We give "great deference to a [district] court's findings of fact because it has the advantage of hearing the testimony, assessing relative credibility of witnesses and acquiring a thorough understanding of the circumstances unique to the matter before it." *Hasnudeen v. Onan Corp.*, 552 N.W.2d 555, 557 (Minn. 1996). On appeal, we will "neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder." *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004). Appellant's argument essentially asks this court to reevaluate the district court's credibility determinations. Because we will not do so, the district court did not clearly err in finding that appellant failed to renegotiate and thus materially breached the contract.

**B.    Respondent's breach**

Appellant also argues that respondent breached the Agreement first by: (1) refusing to make payments until appellant fulfilled "extra tasks" that were not required under the Agreement; (2) failing to pay the total amount due within 18 months; and (3) failing to pay appellant the remaining balance of the original $20,000 when she accepted the quit claim deed on April 30, 2010.

Appellant failed to raise the first argument before the district court. Thus, it is not properly before this court and we decline to address it on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

Appellant's second argument fails. Appellant alleges that respondent breached the Agreement by failing to pay the remaining $22,000 within 18 months of the execution of the quitclaim deed, the deadline of which was October 30, 2011. But in March 2011, Corey's payments to respondent were late and sporadic. And by July 6, 2011, Corey had stopped making payments altogether. We concluded above that this triggered the Agreement's renegotiation clause and that the district court did not err in determining that appellant materially breached the contract by failing to renegotiate. Even assuming that respondent failed to pay the remaining $22,000 by the October 30, 2011 deadline, appellant's breach occurred in July 2011, three months *prior* to the deadline. Because "a material breach is [a] breach of contract that is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance," the district court did not err in determining that appellant's failure to renegotiate excused respondent from paying the remaining $22,000 by the

11

October 30, 2011 deadline. *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728 (Minn. App. 2011) (quotation and citation omitted).

Appellant's final breach-of-contract argument also fails. As previously stated, the property was conveyed from appellant to respondent on April 30, 2010. Appellant alleges that upon this transfer, he was owed $20,000 because the terms of the Agreement states that "[respondent] will, upon execution of the Quit Claim Deed, provide [appellant] with $20,000 cash less the amounts advanced to clear the title and provide relief from future [judgments]." Appellant did not receive the remaining balance on the $20,000 payment until August 15, 2011. But appellant's argument ignores the previous sentence in the Agreement, which reads: "Upon successful satisfaction of these debts and the availability of a clear title for the property from Crow Wing County, [appellant] will issue a Quit Claim Deed to [respondent] for the above property." Thus, the receipt of clear title was a condition precedent to respondent's obligation to make the initial $20,000 payment. The Agreement's "Relationship of Trust" section provides further detail on this matter, stating: "[F]unds will be advanced from [respondent] to [appellant] based solely on the trust that [appellant] will be willing and able to transfer to [respondent] clear title to the above mentioned property." Once clear title was eventually submitted via the mortgages satisfactions, respondent paid appellant the remaining $10,307.37 of the initial $20,000 payment. Because all of respondent's actions were done in accordance with the terms of the Agreement, the district court did not clearly err in finding that she did not breach the contract. Accordingly, we affirm.

**Affirmed.**

12