# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2555

_____

Alan R. Thomsen, doing business as     *
AJ Sign Company,     *

        *

      Appellant,     *

        *

    v.     *

    *   Appeal from the United States

Famous Dave's of America, Inc., a     *   District Court for the
Minnesota corporation; Signworks,     *   District of Minnesota.
doing business as Kurt W. Buggs'     *
Signworks; Vomela Speciality     *
Company, a Minnesota corporation,     *

        *

      Appellees.     *

_____

Submitted: May 12, 2010
Filed: June 4, 2010

_____

Before RILEY, Chief Judge, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Alan R. Thomsen sued Famous Dave's of America, Inc. (Famous Dave's), and two of its sign vendors, alleging copyright infringement and breach of

contract. The district court[1] granted summary judgment to defendants after concluding that Thomsen had unambiguously conveyed all contested copyrights to Famous Dave's by written contract, and Thomsen appeals. We affirm.

## I.

Famous Dave's is a chain of barbeque restaurants. In 1995 its co founder Dave Anderson hired Thomsen, an independent contractor, to design and manufacture signs and decor for the first Famous Dave's restaurant in the Linden Hills neighborhood of Minneapolis. In Anderson's words the restaurant was intended to evoke "the quintessential, all-American barbeque" with a "shack" theme. The interior decor included hand painted signs depicting fire and stylized pigs, as well as "memorabilia of by-gone days" such as old license plates. Thomsen continued to produce artwork and work on interior designs for new Famous Dave's restaurants throughout the 1990's.

Although he signed his name to several of his earliest drawings and marked them "not for reproduction[,]" Thomsen did not register copyrights on any work he created for Famous Dave's in his first six years of working for the company. By October 2001 Famous Dave's had opened thirty six additional restaurants, including franchises. Thomsen created and installed his signs at twenty of the restaurants. In his deposition Thomsen admitted that he had not directly worked on the other sixteen. He had, however, sold sign packages to Famous Dave's and did not know where the company chose to place them.

In 2001 Thomsen was working on a new Famous Dave's restaurant in Wisconsin Dells. Ken Miller, an architect for Famous Dave's, told him that he intended to integrate design principles from the Wisconsin Dells restaurant into

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

another restaurant in development. Thomsen testified that prior to this incident he had believed that his company, AJ Sign Company, was the only one engaged in sign work for Famous Dave's. In response to what he perceived as infringement, Thomsen registered copyrights for several signs he had painted for Famous Dave's. He retained an attorney and sent Famous Dave's a cease and desist letter.

Thomsen claimed ownership of, among other works, all of the pieces at issue in the current dispute and proposed that Famous Dave's pay $600,000 to compensate him for the alleged infringement and to buy a license to the registered works. Famous Dave's took the position that Thomsen neither created nor owned the "look, image, and design" of its restaurants but had "merely produced or painted what was directed of him[.]" Thomsen's invoices for designs had not included any copyright notice or other claim of ownership.

Thomsen and Dave Anderson ultimately resolved the dispute by negotiating a settlement agreement without the assistance of attorneys. They[2] signed the agreement on October 4, 2001. It provided, in part:

[paragraph six][3]

[Famous Dave's] agrees to respect Al's creative architectural/decor designs for Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells. The company further agrees to identify these particular restaurants as "signature restaurant designs" created by Al's company and will use best efforts to advise all future franchise operators and their architects of the proprietary and copyright nature of these architectural/decor concepts as solely provided by Al.

---

[2]Anderson signed the agreement on behalf of Famous Dave's, and the agreement specified that references to "Al" meant "Al and [his wife] Dorothy Thomsen for AJ Sign Company." Dorothy Thomsen is not a party in this case.

[3] We adopt the sequential numbering of paragraphs in the settlement agreement utilized by the district court. Paragraphs in the original are not numbered.

This includes all future stores that Al designs, develops, or decors.

[paragraph nine]
. . . In return, *Al is releasing all copyright, proprietary design and sign work to [Famous Dave's] in all other restaurants that he has worked on* with the exception of Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells. This does not preclude Al from producing or manufacturing these signs for Famous Dave's. (Emphasis supplied.)

The agreement also included recognition by Famous Dave's that Thomsen "was squeezed out of design fees of two recently completed restaurants."

Famous Dave's agreed to pay Thomsen $15,000 in compensation as well as his attorney fees, estimated between $5,000 and $8,000. After signing the agreement Thomsen continued to perform interior design work for Famous Dave's restaurants, some of which he designated on his invoices as "signature" restaurants.

In 2007 Thomsen brought this suit against Famous Dave's and two of its sign vendors, alleging various copyright infringement claims in violation of the Copyright Act of 1976, 17 U.S.C. § 101 et seq., for twenty works he had created between 1995 and 2000. Thomsen also alleged that Famous Dave's breached the settlement agreement, and he sought a declaration that the agreement was ineffective. Famous Dave's counterclaimed for breach of contract and for a declaratory judgment that it is the sole and proper owner of the copyrights over which Thomsen asserted ownership. In addition the company requested reimbursement for the cost of recording the transfer of the copyright registrations of the disputed works to Famous Dave's. All three appellees moved for attorney fees and costs under 17 U.S.C. § 505 and 28 U.S.C. § 1927. The district court granted summary judgment to them on all copyright and contract claims but denied their request for attorney fees. Thomsen appeals.

II.

We review a summary judgment de novo. Swift & Co. v. Elias Farms, Inc., 539 F.3d 849, 851 (8th Cir. 2008). The parties agree that the settlement agreement is governed by Minnesota law. There is accordingly an initial question of whether the contract is ambiguous. Id. This issue is a question of law. Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346 (Minn. 2003). Thomsen urges us to "plac[e] [our]selves in the position of the parties at the time the agreement was negotiated" and take into account the surrounding circumstances in deciding whether he conveyed any copyrights to Famous Dave's. Midway Ctr. Assocs. v. Midway Ctr., Inc., 237 N.W. 2d 76, 78 (Minn. 1975). Under Minnesota law, however, we may consider parol evidence "only if the contract is ambiguous on its face." Hous. and Redev. Auth. of Chisholm v. Norman, 696 N.W.2d 329, 337 (Minn. 2005). "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997).

The settlement agreement signed by Anderson and Thomsen unambiguously assigned ownership of certain copyrights to Famous Dave's. Paragraph nine of the agreement plainly states that "Al is releasing all copyright, proprietary design and sign work to [Famous Dave's] in all other restaurants that he has worked on with the exception of [signature restaurants.]" A transfer of ownership requires no "magic words" to satisfy copyright law; even "a one-line pro forma statement will do." Radio Television Espanola S.A. v. New World Entm't, Ltd., 183 F.3d 922, 927 (9th Cir. 1999) (quotation omitted). Paragraph nine is a clear conveyance ("releasing . . . to") of the sum total of Thomsen's previous work for Famous Dave's ("all other restaurants that he has worked on") with the explicit exception of his signature restaurant designs and future designs. For ease of reference we will call the transferred works "existing non signature designs."

Our interpretation of paragraph nine relies as it must on the "plain and ordinary meaning" of the text.  Bank Midwest, Minn., Iowa, N.A. v. Lipetzky, 674 N.W.2d 176, 179 (Minn. 2004).  It is also consistent with paragraph six because paragraph nine preserves for Thomsen precisely the categories of work which are the subject of paragraph six – future works and signature restaurant designs.  Moreover, the last sentence in paragraph nine is logical only if that paragraph conveys ownership.  Thomsen would not need to reserve the right to continue making the signs if he had not conveyed the copyrights to them.  Our task is to "construe a contract as a whole and attempt to harmonize all clauses[.]"  Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525 (Minn. 1990).

Thomsen attempts to obscure the clarity of paragraph nine by arguing that the statement "Al is releasing all copyright, proprietary design and sign work to [Famous Dave's]" means that Thomsen is releasing Famous Dave's from liability for copyright infringement.  He argues that the dictionary supports his interpretation.  In Black's Law Dictionary 1292 (7th ed. 1999), the first definition of "release" is "liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced[.]"

According to Thomsen, paragraph nine can reasonably be interpreted to mean he was "liberating" Famous Dave's from liability.  The first sentence of paragraph nine does not speak about liability, however.  It uses the phrase "releasing . . . to," not "releasing . . . from."  This language leaves paragraph nine susceptible to only one interpretation, and that is that Thomsen was giving up a right or claim *to* Famous Dave's, rather than liberating Famous Dave's *from* an obligation.  "Because a word has more than one meaning does not mean it is ambiguous[;] . . . only if more than one meaning applies within that context does ambiguity arise."  Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am., 517 N.W.2d 888, 892 (Minn. 1994).  Thomsen's strained reading of the first sentence of paragraph nine would make little sense for it would be saying that he "is liberating

from an obligation all copyright, proprietary design and sign work to Famous Dave's."

Even though the agreement was written without the assistance of counsel, the parties knew how to employ words reflecting a release from liability when they so intended. As paragraph sixteen states, "Al agrees that the company will be forgiven . . . and that Al will not sue the company for any past infringements or disagreements." This provision thus expresses a waiver of liability for past copyright infringement.

Thomsen claims that paragraph sixteen is only a partial release applicable to copyright infringement of his signature restaurant designs while paragraph nine releases Famous Dave's from liability for infringement of his existing non signature restaurant designs. That is not what paragraph sixteen says, however, for it refers without limitation to "*any* past infringements[.]" (Emphasis supplied.) This universal release would make the partial release Thomsen wants to have read into paragraph nine superfluous. Under Minnesota law we must "attempt to avoid an interpretation of the contract that would render a provision meaningless." Chergosky, 463 N.W.2d at 526.

Thomsen argues that our interpretation of paragraph nine is incompatible with "the main purpose" of the agreement. The first paragraph states that "Dave [Anderson] and Martin [O'Dowd, then the Chief Executive Officer of Famous Dave's]'s goal is to create again a spirit of cooperation between Al and the company." The agreement also references the parties' intent to avoid "surprises" and to "start[] over with a clean slate[.]" These broad principles are not undermined by Thomsen's conveyance of copyrights in existing non signature restaurant designs to Famous Dave's. To the contrary, the parties' division of ownership of disputed designs would seem to facilitate future cooperation. Moreover, the "specific terms of a contract govern over the general in the event of conflict." Medtronic, Inc. v. ConvaCare, Inc., 17 F.3d 252, 255 (8th Cir. 1994)

-7-

(applying Minnesota law). Thomsen's interpretation would subjugate the plain and specific language of paragraphs six and nine to what he acknowledges are only the parties' general purposes to reach an agreement.

We also see no conflict between Thomsen's transfer of copyrights to his existing non signature restaurant designs and paragraphs two through five. These paragraphs elaborate on the ways in which Famous Dave's will respect the "proprietary nature of [Thomsen's] work[.]" In paragraph three, for example, Famous Dave's promises to "use best efforts to explain to all existing franchise owners and future franchise owners the proprietary nature of Al's design work and that they are not to be copied or duplicated." The company agrees in paragraph four to "guarantee that there are no present attempts to duplicate Al's designs[.]" In paragraph five, Famous Dave's agrees to "clearly mark . . . as Al's work" reproductions of it in company publications.

Thomsen correctly observes that these initial paragraphs refer to "Al's work[,]" "Al's design work[,]" and "Al's designs" without qualification. Nevertheless, Thomsen's "work" is logically limited to what he actually owns under the agreement, which is specifically defined in paragraphs six and nine as his signature restaurant designs and future designs. Paragraphs six and nine are thus harmonious with paragraphs two through five. That references to Thomsen's "designs" and "work" occur before the agreement narrows his copyright interests makes no difference. Thomsen references no authority to support his argument that initial provisions in a contract cannot be clarified or amplified in subsequent sections.

Instead, he cites Advantage Consulting Group, Ltd. v. ADT Sec. Sys., Inc., 306 F.3d 582, 586 (8th Cir. 2002), where we explained that a term's location in a contract may show the parties' intent but that it is "certainly not dispositive[.]" Only by reading references to Thomsen's "work" in paragraphs two through five as incorporating the more specific ownership provisions in paragraphs six and nine

can we give effect to "[e]ach and every provision" of the agreement and "harmonize [them] with one another" as Minnesota law guides. Oster v. Medtronic, Inc., 428 N.W.2d 116, 119 (Minn. Ct. App. 1988). If paragraphs two through five reserved all of Thomsen's copyrights without limitation as he claims, paragraph six would be unnecessary and paragraphs nine and sixteen would not mean what they say.

Thomsen claims that because he received no money for the copyright transfer, Famous Dave's interpretation of the agreement would lead to an absurd result. He did, however, receive up to $23,000 in the parties' settlement. The agreement states that this payment was for lost design fees and attorney fees, but Thomsen obtained several other benefits from Famous Dave's as well. For example, the company agreed to recognize and "respect" his "creative architectural/decor designs" of the four signature restaurants, to recommend his "turn-key" service to all future franchise operators, to "provide Al the opportunity for additional sign work[,]" and "not to pursue any legal avenues of retribution against Al as a result of this potential lawsuit." Thomsen in turn agreed to "release[] all copyright, proprietary design and sign work to [Famous Dave's] in all other restaurants that he has worked on" other than the signature restaurant designs and future designs, and "not [to] sue the company for any past infringements or disagreements."

This agreement was an exchange of mutual promises and concessions that mended the parties' business relationship. Whether Thomsen made a wise bargain is irrelevant, as unambiguous contract language "shall be enforced by courts even if the result is harsh." Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 347 (Minn. 2003) (quotation omitted). Minnesota law "follows the long-standing contract principle that a court will not examine the adequacy of consideration as long as something of value has passed between the parties." C & D Invs. v. Beaudoin, 364 N.W.2d 850, 853 (Minn. Ct. App. 1985); see also Kielley v. Kielley, 674 N.W.2d 770, 777-78 (Minn. Ct. App. 2004) ("Where promises are

-9-

mutual, made concurrently, and incorporated into a bilateral contract, such promises are sufficient consideration for each other.").

We conclude that Thomsen unambiguously transferred ownership of all existing non signature restaurant designs to the company. Nonetheless, the agreement does not explicitly state that the twenty copyrights disputed in this case are not signature restaurant designs preserved for Thomsen. Where contract terms are ambiguous, "construction becomes a question of fact *unless extrinsic evidence is conclusive*." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 751 (Minn. 2000) (emphasis supplied); see also Cherne Contracting Corp. v. Marathon Petroleum Co., LLC, 578 F.3d 735, 740 (8th Cir. 2009) ("[A]mbiguities in written contracts" do not "necessarily preclude summary judgment. Rather, . . . where no reasonable jury could find the facts necessary to entitle a plaintiff to relief, summary judgment remains appropriate. ").

According to Thomsen "almost all" of the disputed copyrights were placed into "one or more" of the four signature restaurants that are excluded from Thomsen's copyright transfer in paragraph nine of the agreement. In his deposition, however, Thomsen made clear that he understood "signature restaurant designs" to refer to those design elements unique to the signature restaurants. As Thomsen explained, signature restaurant designs meant "[a]ny elements" that were "new . . . to that particular restaurant." He argues that the district court construed the term too narrowly, but he has not cited evidence suggesting that the parties intended it to include any of the disputed copyrights.

At the summary judgment stage, Thomsen is entitled only "to those inferences which might be made without resorting to speculation." Border State Bank, N.A. v. AgCountry Farm Credit Servs., 535 F.3d 779, 783 (8th Cir. 2008). After a careful review of the record, we conclude that no reasonable factfinder could determine that the signature restaurant designs over which Thomsen retained ownership encompassed work not unique to the signature restaurants such as the

-10-

twenty disputed copyrights. Thomsen's copyright claims therefore fail as a matter of law.

We now turn to the disposition of the contract claims. Thomsen alleged that Famous Dave's breached the settlement agreement. The company counterclaimed for breach of contract, seeking a declaratory judgment that it was the sole owner of the disputed copyrights and reimbursement for the cost of recording the transfer of the copyrights. The district court granted summary judgment to Famous Dave's on all contract claims. On appeal Thomsen makes no argument unique to the contract issues; he relies on his position that there was no transfer of copyrights in the agreement. These claims also fail for the reasons already discussed.

## III.

Accordingly, we affirm the judgment of the district court.

_____