MELLOY, Circuit Judge,
Dissenting.
I agree with the majority that “the central question in this case is whether the parties’ agreement precludes the post-termination obligations on which Silta’s complaint is based.” Majority Op., p. 877, supra. Unlike the majority, though, I would hold that the Reclamation Services Agreement (“the Agreement”) is ambiguous with regard to those obligations. I do not believe that “Services to be performed and related rights granted” in Section 2.1 “clearly indicated] that there were no post-termination obligations with respect to the unsold ore.” Id. at p. 877. Indeed, no term in the Agreement specifically addresses whether Cliffs has a post-termination obligation to pay Silta for the eventual sale of ore that Silta reclaimed under the Agreement. That alleged payment obligation could reasonably be construed as a “related right” that expired upon termination under Section 2.1 or as an “agree *881 ment” that survived Cliffs’ termination pursuant to Section 2.2. Neither interpretation is foreclosed by language in the Agreement, and neither interpretation is unreasonable.
Furthermore, the second sentence in Section 2.1 does not support Cliffs’ interpretation of the Agreement. To be sure, that sentence contemplates the possibility of Silta and Cliffs reaching a separate agreement about actions with regard to reclaimed but unsold ore. That provision is silent, however, as to whether the payment obligations from Article 1 apply to “the potential sale of any unsold Product.” In other words, although the second sentence in Section 2.1 contemplates a post-termination scenario, it says nothing about the rights at issue here — i.e., whether Cliffs must pay Silta if it sells the reclaimed ore.
If anything, the second sentence in Section 2.1 cuts against Cliffs’ interpretation of the Agreement. Cliffs claims, and the majority agrees, that Silta has no post-termination interest in the ore that it reclaimed — i.e., Cliffs owed no duty to pay Silta after the Agreement was properly terminated. Instead, the Agreement (via Section 2.1) merely obligated Cliffs to discuss the potential sale of unsold ore with Silta. But if Silta has no right to payment from the potential sale of the unsold ore, what is there for the parties to discuss? Under Cliffs’ interpretation, the duty to discuss appears meaningless or illusory. But if both Cliffs and Silta have an interest in the unsold ore, then neither party could sell or dispose of the ore without consent from the other party. In this latter scenario, the duty to discuss would be meaningful and the proviso about a future agreement would be sensible. Thus, the second sentence of Section 2.1 arguably supports Silta’s interpretation.
The majority also finds that Silta’s interpretation is less reasonable because the “nature and structure of the agreement reflected an attempt to balance Silta’s desire for guaranteed payment against Cliffs’ uncertainty that it could successfully market the ore.” Id. at p. 878. I disagree with this reasonableness analysis for two reasons. First, the majority only draws an inference in favor of the moving party (Cliffs) when conflicting reasonable inferences are available. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595 (8th Cir.2009) (reversing a district court’s dismissal because the court ignored reasonable inferences in the non-movant’s favor and drew inferences in the movant’s favor). To be sure, one could reasonably interpret from the advance-payments provision that Silta was concerned with guaranteed payments. However, the advance-payments provision could also have been important for Silta to avoid the up-front costs of excavation and screening the ore. Furthermore, one could draw a conflicting inference from the aspect of Silta’s compensation that was tied to the amount of ore it excavated, screened, and loaded. This latter compensation method shows that Silta desired to be paid based on the quantity of ore it reclaimed. And it is reasonable to believe that Cliffs accepted this output-based compensation structure, because Cliffs would benefit if Silta was motivated to reclaim as much ore as possible. However, the majority does not acknowledge these conflicting inferences regarding the parties’ priorities and the nature of their compromise, instead putting all inferential weight on the guaranteed-payments provision.
Second, and more importantly, none of the available inferences resolve the dispositive question — whether the parties intended for Silta to be paid for the eventual sale of ore that it reclaimed prior to termination. Even if I accept the majority’s inferences that Silta desired guaranteed payments and that Cliffs was uncertain *882 about selling the ore, there is nothing to support the further inference that Silta valued guaranteed payments so much that it agreed to forego a post-termination right to payment if sale of the ore became economically viable. Because the language of the Agreement is not clear, I believe that it is the fact-finder’s job to interpret the contract in light of all the extrinsic evidence. See Thomsen v. Famous Dave’s of Am., Inc., 606 F.3d 905, 911 (8th Cir.2010) (“Where contract terms are ambiguous, ‘construction becomes a question of fact unless extrinsic evidence is conclusive.’ ” (quoting Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 751 (Minn.2000))). Notably, that would include the repeated statements from Cliffs’ representatives that they intended to pay Silta if and when the reclaimed ore was sold.
Finally, the majority states that Silta’s interpretation of the Agreement would impose perpetual contract liability on Cliffs. It would be an anomalous result, according to the majority, if Cliffs was obligated indefinitely to sell the unsold ore after it determined that the product cannot be economically sold. To the contrary, Silta only seeks to enforce a duty to attempt to sell the ore in good faith. See Am. Compl. ¶ 23 (“Defendants are not in good faith attempting to sell all of the Units”); see also Majority Op. p. 877, supra (“The gravamen of Silta’s complaint is that ... Cliffs was required to continue indefinitely making a good faith effort to sell the unsold ore and to pay Silta according to the contract.”) (emphasis added).' Silta does not allege that Cliffs has an unconditional duty to sell the ore. If the ore could not be sold economically-as the proof showed in the first trial — then Cliffs faces no liability by failing to sell the ore. But if sale of the ore becomes economically viable after the Agreement has been properly terminated, then Cliffs must make a good faith effort to sell the reclaimed ore. In my view, this result is not anomalous or unreasonable.
Even if I agreed that Cliffs has no duty to sell the ore, I would still dissent because Silta also alleges claims based on ore that Cliffs has already sold. Accepting the complaint’s allegations as true, in 2008, Cliffs represented that it sold all of the reclaimed ore, but later said that it only sold enough to offset the advances paid to Silta. See Am. Compl. ¶¶ 21, 22, & 24. Apparently, Silta does not know whether Cliffs actually owes it money. It is possible that Silta was overpaid, as Cliffs suggests, but it also possible that Cliffs received a $3 million windfall when it sold all of the ore that Silta reclaimed. As I see it, these conflicting allegations and unknown facts support Silta’s claim that Cliffs has an implied duty to account, for the sales and communicate that accounting to Silta. See id. at ¶ 23 (“Defendants are not in good faith attempting to ... properly account for the Units available to be sold.”); id. at ¶ 27 (“Defendants have failed to inform Plaintiff of the terms of the sale of the Units.”). Because no language in the Agreement unequivocally addresses that duty, this claim to account for ore actually sold should survive a motion to dismiss even if Cliffs owes no continuing duty to sell the reclaimed ore.
For the foregoing reasons, I respectfully dissent.