# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-2208

_____

Tommy Joe Stutzka, Guardian and    *
Conservator for Carol A. Gibilisco,    *
   *
       Plaintiff/Appellant,    *
   *
     v.    *
   *
James P. McCarville, as Conservator    *
and Guardian of Cheryl A. Nord-    *
McCarville; James Walters, doing    *    Appeal from the United States
business as Prestige Mortgage; Popular    *    District Court for the
Financial Services, L.L.C., a Delaware    *    District of Nebraska.
limited liability company,    *
   *
       Defendants/Appellees.    *
   *
_____    *
   *
Popular Financial Services, L.L.C.,    *
a Delaware limited liability company,    *
   *
       Third Party Plaintiff,    *
   *
     v.    *
   *
Lunnar Title & Escrow, doing    *
business as LTS Title Services, Co.,    *
a Nebraska corporation,    *
   *
       Third Party Defendant.    *

_____

Submitted: December 14, 2004
Filed: August 23, 2005
_____

Before WOLLMAN, ARNOLD, and GRUENDER, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Tommy Joe Stutzka, guardian and conservator for Carol Gibilisco, appeals from the district court's judgment with respect to his claims against Popular Financial Services, L.L.C. (Popular). We affirm in part and reverse in part.

**I.**

Gibilisco is a widow in her sixties. She has been blind since birth and is developmentally disabled. Although she is articulate and capable of recollecting names, places, times, and events, she lacks a basic understanding of arithmetic and financial transactions. The district court described her as "very trusting and eager to please."

Gibilisco and her husband, Sam, who was also visually and developmentally impaired, lived in Sam's mother's house on Hickory Street in Omaha, Nebraska (the Hickory Street property). Carol and Sam were listed on the title of the house. Sam's mother handled all financial matters until her death in 1994 or 1995, at which point Sam took over those responsibilities.

In 1993, the Gibiliscos purchased insurance and annuities from James McCarville. Thereafter, the Gibiliscos met McCarville's wife, Cheryl Nord-McCarville, and the two couples became social acquaintances. McCarville also helped prepare the Gibiliscos' income taxes. After Sam's mother died, the

McCarvilles and Gibiliscos spent more time together. The McCarvilles persuaded the Gibiliscos to join them as informal business associates in a custom embroidery business they owned in O'Neill, Nebraska, some 300 miles from the Gibiliscos' home. The Gibiliscos earned little, if any, income from the business.

In 1999, McCarville asked Sam to obtain a home equity loan on the Hickory Street property to purchase equipment for the embroidery business. McCarville referred Sam to James Walters, a mortgage broker with whom McCarville had a prior business relationship. The Gibiliscos applied for and received a loan from U.S. Bank in the amount of $55,000. The following year, Sam and Nord-McCarville opened several lines of credit at U.S. Bank with approved credit of $25,000. The Gibiliscos believed that the McCarvilles were obligated to pay back these debts and that the McCarvilles were making payments with income received from the embroidery business. Within a few months, however, U.S. Bank informed the Gibiliscos that the mortgage was in default.

In February 2001, Sam contacted Walters to ask about refinancing his lines of credit to obtain a lower interest rate and lower payments. Walters advised Sam to refinance the U.S. Bank mortgage and tie the lines of credit into the refinanced loan. Sam died on April 3, 2001. Shortly thereafter, Walters contacted Carol Gibilisco (now the sole owner of the Hickory Street property) and obtained her consent to process the loan refinancing. He then prepared a loan application with Popular that listed Nord-McCarville as the borrower and Carol Gibilisco as the co-borrower. In preparing and processing the loan, Walters: (1) included numerous misstatements in the application;[1] (2) processed the loan with a fixed rate but closed it with a variable

---

[1]These included: (1) that Walters had interviewed Carol Gibilisco (he had in fact interviewed only Sam); (2) that Carol Gibilisco received $1,257 per month in social security disability payments (Walters had a copy of her social security award letter that showed a monthly income of $359); (3) that Nord-McCarville was unmarried; (4) that Carol Gibilisco had worked for the McCarvilles's embroidery

rate capped at 15.875%; (3) failed to disclose the changed interest rate in the good faith estimate or in the truth-in-lending statement; (4) failed to provide any pre-closing disclosures to Gibilisco; and (5) facilitated a loan that required monthly payments approximately $300 higher than Gibilisco's payments on the U.S. Bank mortgage.

On May 11, 2001, Gibilisco and Nord-McCarville closed on the refinanced loan in the amount of $85,000. The Popular mortgage stipulated a repayment over thirty years, with monthly payments of $877 (including hazard insurance and real estate tax payments) that could rise as high as $1,135 if the variable rate increased to its maximum percentage. The closing documents were not printed in Braille, and McCarville guided Gibilisco's hand to ensure that her signature would fall on the appropriate lines. Gibilisco also signed a deed conveying the Hickory Street property to herself and Nord-McCarville jointly.

At closing, $79,380 of the Popular mortgage was used to pay off the U.S. Bank mortgage and the lines of credit. Walters received a $4,059 broker fee from the title company and an $850 yield spread premium payment from Popular. Walters, in turn, paid McCarville $1,250 for his assistance with the closing.

Stutzka, a family friend of the Gibiliscos who became Carol's conservator in February 2002, subsequently learned of the transaction and brought suit against McCarville, Nord-McCarville, Walters (doing business as Prestige Mortgage), and Popular, alleging unspecified violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*; unspecified violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*; and civil conspiracy. Stutzka also sought: (1) rescission of the deed, promissory note, and deed of trust connected to the

---

business for five years and earned $300 monthly; (5) that Nord-McCarville had a monthly income of $4,166 from the business; and (6) that Carol Gibilisco was male.

Popular mortgage for lack of capacity, undue influence, and fraud; (2) to quiet title to the Hickory Street property in Gibilisco; and (3) a temporary restraining order. Popular cross-claimed for judgment against Walters and filed a third-party claim against the title company that oversaw the closing of the mortgage. The district court subsequently entered a default judgment against McCarville and Nord-McCarville, dismissed Stutzka's TILA claims and one aspect of his RESPA claims, and dismissed Popular's third-party claim.

In analyzing the circumstances of the Popular mortgage transaction, the district court found that:

> Carol did not understand the effect of her signature on the loan documents. She thought the purpose of the transaction was to help the McCarvilles continue the embroidery business and to change banks . . . she never viewed herself as bearing responsibility for repaying the sum borrowed on the Popular loan. Carol thought that Nord-McCarville was obligated to repay the loan and that she would do so. At trial, Carol did not know how much the McCarvilles had paid on the loan. Neither did she understand that Walters earned money from the transaction. The Court specifically finds that whatever general understanding Carol may have had about the nature of the loan transaction and mortgage, she did not have the intellectual capacity to resist the direction of the McCarvilles, nor to appreciate the consequences of her actions.

D. Ct. Order of May 21, 2004, at 12.

Thereafter, the district court issued an amended judgment that rescinded the Popular mortgage; declared null and void the deed that transferred ownership of the Hickory Street property to Gibilisco and Nord-McCarville; quieted title to the Hickory Street property in Gibilisco; reformed the promissory note and deed of trust to remove Gibilisco as a borrower; ordered Walters to remit $4,059 to Gibilisco and $850 to Popular; denied Popular's cross-claim against Walters; and ordered Gibilisco

to remit $85,000 (the amount of the loan without interest) to Popular. Stutzka appeals from this final aspect of the judgment, from the district court's denial of his RESPA claims (the remainder of which were dismissed in the district court's May 21, 2004, order), and from the district court's dismissal of his TILA claims.

On October 7, 2004, the United States Bankruptcy Court for the District of Nebraska issued an order for default judgment in a related case brought by Popular against the McCarvilles. See Popular Financial Services, LLC v. James P. McCarville, Order for Default Judgment, Case No. BK 02-41760, Chapter 7, Adversary No. 04-04076 (Bankr. D. Neb. 2004).[2] This judgment requires the McCarvilles to pay Popular $116,813.28, plus interest of $22.96 per day, beginning on September 29, 2004, until the judgment is collected, together with Popular's costs.

## II.

Stutzka contends that the district court erred by failing to relieve Gibilisco of the burden to make restitution for the $85,000 Popular mortgage. We review the district court's application of Nebraska law *de novo*, its denial of equitable relief for abuse of discretion, and its findings of fact for clear error. Lincoln Benefit Life Co. v. Edwards, 243 F.3d 457, 461 (8th Cir. 2001) (per curiam) (citations omitted).

Under Nebraska law, an action to rescind a written instrument is an equity action. Kracl v. Loseke, 461 N.W.2d 67, 69 (Neb. 1990). Rescission is intended "to place the parties in a status quo, that is, return the parties to their position which existed before the rescinded contract." Id. at 75. Accordingly, "[i]n ordering Rescission, a court must require all parties to return whatever they gained under the

---

[2]Stutzka moved to enlarge the record on appeal to include a copy of this judgment. Because we may take judicial notice of judicial opinions and public records, see, e.g., United States v. Eagleboy, 200 F.3d 1137, 1140 (8th Cir. 1999), we include the judgment in our consideration of this case.

rescinded document." See Edwards, 243 F.3d at 461 (citing Gnuse v. Garrett, 261 N.W. 143, 144 (Neb. 1935)).

Here, Stutzka (as Gibilisco's conservator) requested that the district court rescind the Popular mortgage, and the district court granted Stutzka the exact relief he prayed for. A necessary consequence of the rescission remedy, however, was that the district court was obligated to require Gibilisco to return everything she had "gained" under the Popular mortgage. Because Gibilisco received benefits from the Popular mortgage in the form of relief from the U.S. Bank mortgage and from her husband's debts (i.e., the lines of credit), she was required by Nebraska law to make restitution to Popular in order to return both parties to the status quo.

Stutzka's argument that Gibilisco should not be required to return the $85,000 due to the invalidity of the underlying U.S. Bank obligations is unavailing. Stutzka contends that the U.S. Bank mortgage was void due to Gibilisco's lack of capacity to enter into it and that the lines of credit were obligations of Sam Gibilisco and thus could not be imputed to Carol. Whatever potential merit these assertions might have in a direct challenge to the underlying obligations, the fact remains that, at the time of the Popular mortgage, the U.S. Bank mortgage was valid and enforceable against Gibilisco and the lines of credit were valid and enforceable against her husband's estate because none of the obligations had been judicially challenged or set aside.[3] Because Nebraska law makes clear that rescission seeks a return to the status quo *ex ante* the challenged instrument, id. (rescission dissolves the instrument at issue and

_____

[3]Because the record lacks any evidence pertaining to Sam's will, it is unclear whether any assets currently possessed by Gibilisco would have been reachable by U.S. Bank had it attempted to collect on the lines of credit. Nonetheless, by satisfying Sam's debts, the Popular mortgage relieved Gibilisco from any potential liability for the lines of credit and from the burden of defending against any collection action brought by U.S. Bank, as well as removed a claim against her late husband's estate.

renders it a nullity), the district court did not abuse its discretion in ordering that Gibilisco repay the $85,000 to Popular.

### III.

Stutzka next challenges the district court's dismissal of his TILA claims on Popular's motion for summary judgment. We review *de novo* the district court's grant of summary judgment. Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Employers Mut. Cas. Co. v. Wendland & Utz, Ltd., 351 F.3d 890, 893 (8th Cir. 2003); Fed. R. Civ. P. 56(c). We view the evidence and the inferences that may reasonably be drawn therefrom in the light most favorable to the nonmoving party. Wendland, 351 F.3d at 893.

Stutzka alleged two TILA violations in the district court: (1) that Popular failed to disclose material terms at the closing; and (2) that Popular failed to provide Gibilisco notice of her right to cancel the loan. Stutzka requested damages and attorney's fees for both alleged violations and rescission based upon the second.

The testimony of the closing agent for the Popular mortgage established that all material terms were disclosed at the closing (including the right to cancel) and that Gibilisco signed documents attesting to that fact. Gibilisco's signature on the documents created a rebuttable presumption that the proper disclosures had been delivered to her. 15 U.S.C. § 1635(c). In an attempt to overcome that presumption, Stutzka submitted an affidavit signed by Gibilisco in which she stated that she "never received any papers, documents, or letters of any kind regarding the mortgage." The district court noted that:

> . . . crucial to the Plaintiff's argument that the mortgage violated the disclosure provision of the TILA is the assertion that Gibilisco was never provided with copies of the right to cancel or other documents

-8-

relating to the mortgage. The Plaintiff supports this statement with an affidavit of Carol Gibilisco stating that, among other things, she never received copies of any mortgage documents. [Citation omitted.] Although the affidavit states that she has personal knowledge of the facts in the affidavit[,] noticeably absent is a statement that she is competent to testify to the facts stated in her affidavit. The absence of a statement of competency in Gibilisco's affidavit is consistent with the assertion in another Plaintiff's motion for partial summary judgment in which it is argued that Gibilisco was subject to undue influence. The Plaintiff argues that Gibilisco is legally incompetent, yet relies on her statements in support of facts crucial to these motions for partial summary judgment. The Court cannot rely on Gibilisco's affidavit.

D. Ct. Order of March 26, 2004 (Doc. 272), at 4-5.

The district court erred in equating Gibilisco's lack of competency to close on the Popular mortgage with a lack of ability to testify to the general fact that she had not received the documents at the closing. This conclusion was inconsistent with general evidentiary principles, see Fed. R. Evid. 601, and with the district court's factual findings that Gibilisco "displays good recollection of names, places, times and events." D. Ct. Order of May 21, 2004, at 4. Because Gibilisco's affidavit, at the very least, would have rebutted the presumption of delivery, the district court also erred in granting summary judgment on the TILA claims. This is especially true given the district court's specific finding that Gibilisco was not given her copies of the closing documents. Id. at 12.

Furthermore, even assuming, *arguendo*, that Gibilisco's affidavit was unreliable, the district court also had before it an affidavit from Stutzka that was not considered due to an apparent problem with the district court's electronic case filing system. Stutzka's affidavit stated that he had done Gibilisco's record keeping since Sam's death, that he would have known if Gibilisco received loan papers, that he was present almost immediately when Gibilisco returned from the closing, and that he was

unaware of the existence of any documents at that time. These assertions, apart from Gibilisco's affidavit, are sufficient to surmount the rebuttable presumption of delivery and create a fact issue for trial.

Finally, these claims are not moot, because Stutzka may be entitled to statutory damages and attorney's fees if he prevails on them, see 15 U.S.C. § 1640, notwithstanding the district court's order rescinding the Popular mortgage on other grounds. See Dryden v. Lou Budke's Arrow Fin. Co., 661 F.2d 1186, 1191 (8th Cir. 1981) ("TILA plaintiffs who are otherwise entitled to recover need not show that they sustained actual damages stemming from the TILA violations before they may recover the statutory damages provided.").[4]

The district court's grant of summary judgment with respect to Stutzka's TILA claims is reversed, and the case is remanded for further proceedings with respect to those claims. All other aspects of the district court's judgment are affirmed. The stay of execution entered by this court on November 4, 2004, is vacated.

_____

[4]In addition, the district court properly concluded that both the $850 yield spread premium and the $1,250 fee that Walters paid to McCarville were reasonably related to services that Walters and McCarville performed, see 12 U.S.C. § 2607 (fees may be shared or split in exchange for services actually performed), and that Stutzka failed to present evidence that either fee was unreasonable. Accordingly, we affirm the district court's denial of Stutzka's RESPA claims. Stutzka's remaining arguments are without merit.