# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3385

_____

Larry D. Jesinoski; Cheryle Jesinoski

*Plaintiffs - Appellants*

v.

Countrywide Home Loans, Inc., doing business as America's Wholesale Lender, a subsidiary of Bank of America, N.A.; BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A., a Texas limited partnership, formerly known as Countrywide Home Loans Servicing, L.P.; Mortgage Electronic Registration Systems, Inc., a Delaware corporation; John and Jane Does 1-10

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 13, 2017
Filed: February 28, 2018

_____

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Mortgage loan borrowers Larry and Cheryle Jesinoski received Truth in Lending Act ("TILA") disclosure documents at their loan closing. Pursuant to TILA

and its regulations, borrowers may rescind their loan within three days of closing, but the rescission period extends to three years if the lender fails to deliver "the required notice or material disclosures." 12 C.F.R. 1026.23(a)(3)(i); see also 15 U.S.C. § 1635(a), (f). Admitting that the lender delivered the required notice (the "Notice") and material disclosures, but arguing that the lender did not provide the required number of copies, the Jesinoskis sought to rescind their loan on a date just shy of the three-year anniversary of loan execution.

The lender denied rescission, asserting the Jesinoskis had signed an acknowledgment indicating receipt of the required disclosures. The Jesinoskis sued more than three years after closing, alleging TILA violations. The district court dismissed the action as untimely, holding that, even if the three-year limitation period applied, borrowers must file suit and not merely provide notice within the three-year time period. On appeal, our court affirmed, recognizing that our circuit had already taken a position on this issue within an existing circuit split. Jesinoski v. Countrywide Home Loans, Inc., 729 F.3d 1092, 1093 (8th Cir. 2013) (per curiam). The Supreme Court granted certiorari and reversed, holding the three-year limitation period applied to the provision of notice rather than the filing of suit. Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790, 792 (2015).

On remand, the district court[1] granted summary judgment, concluding the signed acknowledgment created a rebuttable presumption that the Jesinoskis had received the required number of copies. The court also concluded the Jesinoskis failed to generate a triable question of fact rebutting the presumption. We affirm.

---

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

## I.

At loan closing, the Jesinoskis signed their names to an acknowledgment form stating in material part:

> The undersigned each acknowledge receipt of two copies of <u>NOTICE of RIGHT TO CANCEL</u>, and one copy of the Federal Truth in Lending Disclosure Statement. Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

In this litigation, the Jesinoskis do not claim to remember whether they received a total of two or four copies of the Notice. Rather, they attempt to demonstrate that they received only two copies by establishing that, several years later, their file of closing documents contained only two copies. Specifically, Larry Jesinoski states that he took a file containing his closing documents home immediately after the closing and placed it in an inconvenient-to-access, but unlocked, filing cabinet. Then, more than two years later, in an attempt to negotiate better loan terms, the Jesinoskis contacted Mark Heinzman, a mortgage specialist at a firm named Financial Integrity. Heinzman referred the Jesinoskis to a firm named Modify My Loan USA. The Jesinoskis claim they paid Modify My Loan USA $3,000 but were defrauded and received no assistance. They then recontacted Heinzman who asked them to look in their mortgage file for certain documents. Larry Jesinoski asserts that, at that time, he opened the file for the first time since closing, but he did not understand what Heinzman wanted him to locate. As such, the Jesinoskis agreed to bring their file to Heinzman.

According to the Jesinoskis, they were present when Heinzman received and reviewed their file approximately two years and nine months after loan closing. Also according to the Jesinoskis, Heinzman told them they were entitled to rescind their loan because their file did not contain all necessary copies of disclosure documents.

-3-

Soon after the meeting, the Jesinoskis paid Heinzman $3,000 to draft a rescission notice and send it to the lender.

The lender refused rescission based on the acknowledgment, and the Jesinoskis eventually contacted an attorney to initiate this suit. Larry Jesinoski could not recall whether he kept the closing file after his in-person meeting with Heinzman and gave the closing file to his attorney himself, or whether he left the closing file with Heinzman and Heinzman gave it to their attorney. Cheryle Jesinoski, in contrast, stated that they took their closing file home again after the meeting with Heinzman. Heinzman, however, stated in a declaration that he remembers nothing about the Jesinoskis' file and, if deposed, would answer that he does not remember the Jesinoskis' file.

At Larry Jesinoski's deposition, counsel for the lenders asked him whether he had seen various paginated closing documents that the Jesinoskis produced in discovery and that were missing pages. Larry did not know if he had seen the documents before and did not know if the missing pages had been present at an earlier time. Then, in Cheryle Jesinoski's deposition, her attorney interrupted opposing counsel's questioning to emphasize that, although the Jesinoskis produced documents in response to discovery, they did not actually "represent[] whether or not [the documents produced were] the entire contents of what was contained within the closing documents on . . . refinance." The Jesinoskis repeatedly disclaimed any personal knowledge of the actual documents signed and received at closing.

Ultimately, against this backdrop, the district court concluded the acknowledgment created a presumption that the Jesinoskis received the proper number of copies, and the summary judgment record did not present a genuine question of fact to rebut the presumption.

II.

The parties raise several legal arguments concerning the availability of rescission. The Jesinoskis argue that TILA demands strict compliance such that the provision of the Notice to borrowers, albeit with one rather than two copies apiece, warrants belated rescission, an award of attorneys' fees, and an award of statutory damages. They also argue that, even though TILA expressly grants courts the authority to require tender of the loan proceeds prior to cancellation of the lender's security interest, the Supreme Court in the earlier appeal in this matter eliminated that authority. The defendants contest these assertions, arguing: Supreme Court language quoted by the Jesinoskis is dicta; the statute itself only requires "notice" not a particular number of copies; and any error in delivery is harmless because the Jesinoskis received actual notice. We need not address these issues. Even if the Jesinoskis' theories were otherwise correct, their theory of relief is foreclosed on summary judgment unless a reasonable jury could conclude the lender failed to provide the required number of copies of the Notice.

We review the district court's grant of summary judgment de novo. See Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004). Although this case arises under TILA, the parties agree that Minnesota contract law governs underlying questions of contract interpretation. Interpretation of the acknowledgment and determination of whether the acknowledgment is ambiguous are questions of law for the court. See Thomsen v. Famous Dave's of Am., Inc., 606 F.3d 905, 908 (8th Cir. 2010); Denelsback v. Wells Fargo & Co., 666 N.W.2d 339, 346 (Minn. 2003) ("[W]hether a contract is ambiguous is a question of law . . . ."). As such, we review de novo whether the signed acknowledgment is ambiguous.

Pursuant to TILA, a signed acknowledgment that the borrowers received the required Notice creates a rebuttable presumption of proper delivery. 15 U.S.C. § 1635(c); Keiran v. Home Capital, Inc., 858 F.3d 1127, 1131 (8th Cir. 2017),

-5-

petition for cert. filed, Nov. 3, 2017. We conclude the acknowledgment in this case is unambiguous and gives rise to the presumption. The acknowledgment states, "The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL, and one copy of the Federal Truth in Lending Disclosure Statement." Larry Jesinoski signed the acknowledgment indicating his receipt of two copies. Cheryle Jesinoski also signed the acknowledgment, indicating her receipt of two copies.

The Jesinoskis argue that because the acknowledgment does not state, "each acknowledge receipt of two copies *each*" the acknowledgment shows receipt of only two copies total or, at a minimum, results in ambiguity that must be construed against the lender. We view this argument as a tortured attempt to create an ambiguity where none exists. See Lee v. Countrywide Home Loans, Inc., 692 F.3d 442, 451 (6th Cir. 2012) (holding the language "[t]he undersigned each acknowledge receipt of two copies of *NOTICE OF RIGHT TO CANCEL. . . .*" unambiguously gave rise to the statutory presumption that the debtors who signed the acknowledgment received the proper number of copies (alteration in original)). The language of the acknowledgment as presented to and signed individually by Larry and Cheryle more than suffices to demonstrate clearly each spouse's receipt of two copies. There is no indication on the acknowledgment that the Jesinoskis were signing jointly on one another's behalf. As such, we agree with the Sixth Circuit which interpreted identical language and concluded, "[s]uch clarity should be rewarded with a presumption of delivery that cannot be overcome without specific evidence demonstrating that the borrower did not receive the appropriate number of copies of the Notice." Id.

To rebut the presumption, the Jesinoskis do not claim to have personal knowledge of the number of copies they received at closing. Rather, the Jesinoskis attempt to disprove their receipt of four copies total by focusing on the contents of their closing-document folder as it purportedly existed two years and nine months after closing. Relying upon what the parties refer to as a closed-envelope theory, the

Jesinoskis assert a reasonable jury could conclude the lender provided only two copies total at closing because, according to the Jesinoskis, their folder contained only two copies years later when opened.

To prove the contents of the file, however, the Jesinoskis' rely on their own recitation of Heinzman's purported description of the closing file. They represent that he said the file contained only two copies of the Notice, but they do not claim that they conducted their own inspection. Although Larry states that he looked at the file in his home prior to meeting with Heinzman, he admits he did not know what he was looking for at that time. Moreover the Jesinoskis do not agree as to whether they subsequently left the file with Heinzman nor do they claim to have produced their entire file in discovery. Finally, even as to documents they did produce, they do not claim to have knowledge of, or explanation for, seemingly missing pages.

A party may not defeat summary judgment with evidence that will be inadmissible at trial, and the Jesinoskis' representation about what Heinzman described is textbook inadmissible hearsay.[2] See Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001) ("While we review the record in the light most favorable to Mays as the non-moving party, we do not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay."); see also Fed. R. Civ. P. 56(e). Given the other indicia of unreliability surrounding the Jesinoskis' closing file, there exist no exceptions that might permit a court to consider the hearsay.

---

[2] Recognizing the critical importance of Heinzman's hearsay statements to their case, the Jesinoskis moved in the district court for leave to conduct an untimely deposition of Heinzman. The district court denied the motion. As noted, the actual summary judgment record contains a declaration from Heinzman disavowing personal knowledge of the Jesinoskis' file. As such, the district court did not abuse its considerable discretion in denying the Jesinoskis' discovery motion.

Finally, we note that the defendants urge us to affirm the judgment of the district court based simply on <u>Keiran</u>, in which we held two debtors' self-serving affidavits claiming personal knowledge of the closing documents failed to overcome the TILA presumption arising from a signed acknowledgment. 858 F.3d at 1131–32. The Jesinoskis argue in response that their case is more akin to earlier cases in which our court denied summary judgment based, in part, on similar affidavits. <u>See</u> <u>Bank of Am., N.A. v. Peterson</u>, 746 F.3d 357, 358–59 (8th Cir. 2014), <u>vacated in part on other grounds</u>, <u>Bank of Am., N.A. v. Peterson</u>, 782 F.3d 1049, 1050 (8th Cir. 2015); <u>Stutzka v. McCarville</u>, 420 F.3d 757, 762–63 (8th Cir. 2005). We reject the parties' invitation to parse these cases. Here, the Jesinoskis neither claim personal knowledge nor rely on affidavits like the debtors in <u>Kieran</u>, <u>Peterson</u>, and <u>Stutzka</u>. Simply put, the Jesinoskis' evidentiary showing on summary judgment does not rise to the level present in any of the three cited cases.

We affirm the judgment of the district court.

_____