**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4201-18T2

THE BANK OF NEW YORK
MELLON f/k/a THE BANK OF
NEW YORK, AS TRUSTEE FOR
THE CERTIFICATEHOLDERS
OF THE CWABS, INC., ASSET-
BACKED CERTIFICATES
SERIES 2004-5,

      Plaintiff-Respondent,

v.

DOLORES MARIE DICICCO,

      Defendant-Appellant,

and

BOSCOV'S and NEW CENTURY
FINANCIAL SERVICES INC.,

      Defendants.

_____

Argued January 6, 2020 – Decided February 3, 2020

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Burlington County, Docket No. F-000714-16.

Lewis G. Adler argued the cause for appellant.

Robert F. Thomas argued the cause for respondent (Pluese, Becker & Saltzman, LLC, attorneys; Stuart H. West, on the brief).

PER CURIAM

In this foreclosure action, defendant Dolores Marie Dicicco appeals from a July 27, 2016 order granting plaintiff Bank of New York summary judgment, denying defendant's cross-motion for summary judgment, striking defendant's answer, deeming the dispute an uncontested foreclosure, and transferring the matter to the Office of Foreclosure for entry of final judgment. She also appeals the May 30, 2019 final judgment of foreclosure and an April 12, 2019 order vacating the court's administrative dismissal of the action and reinstating the foreclosure complaint.

Defendant contends she had no financial obligations to plaintiff due to her timely rescission of the loan in accordance with the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 to 1667f. She also contends the court abused its discretion when it reinstated the foreclosure complaint. We disagree and affirm all three orders.

2

## I.

On or about April 21, 2004, defendant executed a six percent fixed rate note in favor of Full Spectrum Lending, Inc. (Full Spectrum) in the amount of $277,500, encumbering a residence in Southampton. As security for repayment, defendant executed a mortgage in the same amount to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Full Spectrum. The following day defendant sent an April 22, 2004 notice of right to cancel the note, which she mailed to Full Spectrum. It is unclear from the record when Full Spectrum received the notice, but it is undisputed that Full Spectrum failed to unwind the transaction and proceeded to disburse the mortgage funds to defendant. At closing, defendant used the proceeds to pay off a prior mortgage in the amount of $226,357.33 and a tax bill in the amount of $1483.66. She also received a cash payment of $38,457.91.

Defendant made timely monthly payments in accordance with the note for approximately five years: from June 2004 until she defaulted in March 2009. MERS, acting solely as nominee for Full Spectrum, assigned defendant's mortgage to plaintiff on October 19, 2009. Plaintiff mailed defendant a June 11, 2015 notice of default and intent to foreclose stating that as a result of

defendant's failure to make her monthly mortgage payments from March 2009 to June 2015, she owed $143,210.78 and was in default.

Plaintiff elected to accelerate the debt consistent with the note and filed a January 8, 2016 foreclosure complaint. Plaintiff joined Boscov's and New Century Financial Services, Inc. because of their interest in the foreclosure arising out of their respective judgments and liens on the property.

Defendant filed an answer and counterclaims demanding judgment dismissing plaintiff's foreclosure complaint. In her second affirmative defense, defendant alleged that plaintiff "lack[ed] standing to prosecute the instant case" because it, or its predecessor in interest, "failed to comply with TILA by failing to honor . . . [d]efendant's written rescission notices as required by TILA . . . and Regulation Z."[1] More specifically, defendant stated that her "notice [of the rescission] was sent prior to the disbursement of any funds on the loan" and pursuant to TILA and Regulation Z, the mortgage and note "are deemed null and void . . . [and] [d]efendant has no further obligation to pay for the funds."

---

[1] Defendant specifically referenced sections of Regulation Z that provides in relevant part that "[t]o exercise the right to rescind [under TILA], the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication." 12 C.F.R. § 1026.15(a)(2); 12 C.F.R. § 1026.23(a)(2).

Plaintiff moved for summary judgment, and to strike defendant's answer and counterclaims. Defendant filed a cross-motion for summary judgment arguing that plaintiff's foreclosure complaint should be dismissed as a matter of law because "there does not exist a valid mortgage on the premises as the transaction was canceled in accordance with TILA and Regulation Z." Relying on 15 U.S.C. § 1635(b) and Jesinoski v. Countrywide Home Loans, 574 U.S. 259 (2015), defendant argued that Full Spectrum "failed to act within [twenty] calendar days after [her] tender of the notice of rescission," and thus, she "may keep the proceeds without any further obligation," as the "loan is void."

At a July 22, 2016 summary judgment hearing, defendant's counsel explained defendant's five years of timely mortgage payments as acts undertaken simply to "preserve the status quo" and because defendant "was trying to preserve her position concerning her loan so that when [Full Spectrum] did unwind it she would not be behind." Defendant's counsel concluded that "any payments that she made were . . . at best . . . received as a gift by [Full Spectrum] . . . and [defendant] has no further obligation."

Plaintiff acknowledged at the summary judgment hearing that it "doesn't dispute the fact that a valid notice of rescission was sent [by defendant to Full Spectrum]" and agreed that Full Spectrum received defendant's notice to cancel

5

yet still tendered the mortgage funds to her. Plaintiff also acknowledged that, under the statute, defendant "was not obligated to return the cash that she received . . . immediately, because . . . [she was] not obligated to return those funds until . . . [Full Spectrum] acted."

In a July 27, 2016 order, Judge Paula T. Dow granted summary judgment in favor of plaintiff and denied defendant's cross-motion. Judge Dow also entered default against defendant and transferred the matter to the Office of Foreclosure to proceed as an uncontested matter.

In her accompanying written statement of reasons, Judge Dow found that plaintiff had possession of the note and mortgage prior to the filing of the foreclosure complaint and thus had standing to prosecute the foreclosure action. Specifically, the court found that the original note and mortgage were "executed and delivered to Full Spectrum and MERS, as nominee for Full Spectrum, and ultimately transferred to [p]laintiff by way of assignment, who possessed both at the time it filed the complaint." Judge Dow concluded that plaintiff established standing "as an assignee of the [m]ortgage by assignment and possession of the [n]ote, endorsed in blank, prior to the filing of the complaint."

Judge Dow also found that plaintiff established a prima facie right to foreclose the property because: "[d]efendant executed the [m]ortgage and

[n]ote"; "[p]laintiff is the current holder of the [m]ortgage and [n]ote"; "[p]laintiff has been in such possession since before the commencement of the current foreclosure action"; "[d]efendant was properly served with a [notice of intent to foreclose]"; and "[d]efendant defaulted under the terms of the [n]ote and [m]ortgage on March 1, 2009."

The court further noted that "[t]he only issue of any significant disagreement is the parties' competing interpretations of [TILA] and the effect on [d]efendant's [n]otice to [c]ancel on April 22, 2004" and whether "TILA serves as a bar to foreclosure under these circumstances." Judge Dow first rejected plaintiff's arguments that defendant's claims under TILA were time barred by 15 U.S.C. § 1640(e), as "defendant was entitled to raise violations of TILA as a defense in the present foreclosure action," and 15 U.S.C. § 1635(f), which she interpreted as merely "extending the typical [three]-day right of rescission to three years in the event that required information and forms are not delivered to the borrower."

Judge Dow found that defendant's April 22, 2004 notice to rescind "[did] not serve as a bar to foreclosure under . . . TILA, given [d]efendant's subsequent and consistent ratification of the terms of the loan." She emphasized that following the erroneous distribution by Full Spectrum, defendant "chose to keep

A-4201-18T2

the funds and make timely payments for five years." She found that defendant "considered the [m]ortgage and [n]ote enforceable, as it [was] unlikely [defendant] would continue sending monthly payments to a creditor she believed nothing was owed." The court also declined to unjustly enrich defendant stating that to escape foreclosure on these facts would "render the proceeds of the [m]ortgage a windfall to [d]efendant, who would be free of any obligation under the [n]ote" and plaintiff "would be left without recourse to pursue the amount loaned by their predecessor."

The court also found that defendant's reliance on Jesinoski was misplaced. According to Judge Dow, Jesinoski "held that TILA does not require the filing of a suit or return of the funds to effectuate rescission," but here, "there [was] no question that [d]efendant timely and properly rescinded the loan." The court clarified that the issue was not whether defendant's rescission was timely, but whether defendant "ratified the terms of the loan by commencing payment and continuing to so pay for five years."

Despite the court's July 27, 2016 order, plaintiff did not promptly move for final judgment and, on September 1, 2017, the action was administratively dismissed without prejudice for lack of prosecution. Plaintiff moved to reinstate the foreclosure action on March 18, 2019, which defendant opposed. Judge

8

Kathi F. Fiamingo granted plaintiff's motion in an April 12, 2019 order and in an accompanying written statement of reasons acknowledged that plaintiff "had a significant and unexplained delay in moving this matter forward," but reasoned that "defendant's default occurred more than ten years ago and plaintiff is now in a position to make application for final judgment." Judge Fiamingo concluded that "[d]enying plaintiff the relief it requests would be inequitable under [the] circumstances." The Office of Foreclosure subsequently entered final judgment on May 30, 2019 in the amount of $445,554.90, plus interest and costs. This appeal followed.

## II.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). "Summary judgment must be granted if 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting R. 4:46-2(c)). We accord no special deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994). A party seeking to foreclose must demonstrate "execution, recording, and non-payment of the mortgage." Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952).

In addition, the foreclosing party must "own or control the underlying debt." Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 222 (App. Div. 2011) (quoting Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011)). In Mitchell, we held that possession of the note or an assignment of the mortgage predating the original complaint conferred standing. Id. at 225. We agree with Judge Dow that plaintiff had standing and also established a prima facie case to foreclose, rulings defendant does not challenge on appeal.

III.

TILA permits consumers to rescind specified loans upon timely notification. 15 U.S.C. § 1635(a). Upon receipt of a rescission notice that complies with applicable regulations, a creditor must, within twenty days,

"return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." Id. at § 1635(b).

In her principal argument on appeal, defendant contends that the trial court "improperly held that the void mortgage was enforceable after all parties acknowledge that . . . [d]efendant had properly cancelled the loan." Specifically, defendant maintains that the aforementioned TILA provision, and its applicable regulations, along with the Jesinoski and Sherzer holdings, support a conclusion that "upon rescission the loan was void," and she was "required to tender back the loan proceeds . . . only after [Full Spectrum] performed its statutory obligations." The consequence of Full Spectrum's inaction according to defendant is that she is permitted to "keep the proceeds without any further obligation." We disagree and affirm substantially for the reasons detailed in Judge Dow's thoughtful written decision. We offer the following additional comments.

As Judge Dow correctly concluded, and despite defendant's contentions, the holding in Jesinoski is inapplicable to the facts here. In Jesinoski, the Supreme Court resolved whether a borrower properly invoked his right to

11

rescind under TILA by merely providing written notice or whether TILA required a borrower to sue the lender before the three-year statute of limitations period lapsed. Jesinoski, 574 U.S. at 259 ("The question presented is whether a borrower exercises this right by providing written notice to his lender, or whether he must also file a lawsuit before the [three]-year period elapses.").[2] Judge Dow did not conclude that defendant's rescission was ineffective for her failure to file a timely lawsuit seeking rescission. Rather, defendant's rescission was deemed ineffective due to the undisputed fact that defendant ratified the loan by obtaining its benefits, making timely payments thereafter for five years, and failing to tender the loan proceeds. Jesinoski does not stand for the proposition seemingly urged by defendant that a creditor under these circumstances loses all interest in the property resulting in the borrower getting a free house.

---

[2] We also note that in proceedings conducted upon remand from the Supreme Court, the United States District Court for the District of Minnesota explained that the Supreme Court only reached "the narrow issue of whether [debtors] had to file a lawsuit to enforce a rescission" or "merely deliver a rescission notice within three years of the loan transaction," and "nothing in the Supreme Court's opinion . . . would override TILA's tender requirement." See Jesinoski v. Countrywide Home Loans, Inc., 196 F.Supp.3d 956, 962 (D. Minn. 2016), aff'd, Jesinoski v. Countrywide Home Loans, Inc., 883 F.3d 1010 (8th Cir. Feb. 28, 2018).

In this regard, TILA also explicitly states that if a "creditor does not take possession of the property within [twenty] days after tender by the obligor, ownership of the property vests in the obligor without obligation on his [or her] part to pay for it." 15 U.S.C. § 1635(b). Here, defendant did not ever tender the residence or the proceeds of the loan back to Full Spectrum or plaintiff following the notice of rescission.

Additionally, Jesinoski did not overturn Third Circuit precedent that "a notice of rescission is not effective if the obligor lacks either the intention or the ability to perform, i.e., repay the loan." Sherzer v. Homestar Mortg. Servs., 707 F.3d 255, 265 n.7 (3d Cir. 2013). And Jesinoski also did not remove a court's discretion to modify rescission procedures. See 15 U.S.C. § 1635(b) (stating that the rescission "procedures prescribed by this subsection shall apply except when otherwise ordered by a court"); see also 12 C.F.R. 226.23(d)(4) (stating that the rescission "procedures outlined in paragraphs (d)(2) and (3) of [§ 226.23] may be modified by court order").

It is beyond peradventure that defendant had no intention to repay the loan as she clearly performed in accordance with its terms for years and used its funds to pay off a prior mortgage, other debts, and also retained $38,457.91 of the mortgage proceeds. Under these circumstances, the court properly rejected

13

defendant's interpretation of TILA and <u>Jesinoski</u> and determined that defendant's notice to rescind did not act as a bar to the foreclosure proceedings.

We also conclude that to allow defendant to void the mortgage and escape foreclosure would lead to her unjust enrichment. "The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." <u>Goldsmith v. Camden Cty. Surrogate's Office</u>, 408 N.J. Super. 376, 382 (App. Div. 2009) (internal quotation marks omitted). "To establish a claim for unjust enrichment, 'a [party] must show both that [the opposing party] received a benefit and that retention of that benefit without payment would be unjust.'" <u>Iliadis v. Wal-Mart Stores, Inc.</u>, 191 N.J. 88, 110 (2007) (quoting <u>VRG Corp. v. GKN Realty Corp.</u>, 135 N.J. 539, 554 (1994)).

Defendant used the disbursed funds to pay off a mortgage, pay outstanding taxes, and received a $38,457.91 cash payment. She acted in compliance with the mortgage and note for five years and raised her claim that she rescinded the mortgage only after facing foreclosure due to her now decade-old, undisputed default. As we noted in <u>Deutsche Bank Trust Co. Americas v. Angeles</u>, 428 N.J. Super 315, 320 (App. Div. 2012), "[i]n foreclosure matters, equity must be applied to plaintiffs as well as defendants."

IV.

Defendant's final claim that the court erred in reinstating the complaint is also without merit. "[A]n application to open, vacate, or otherwise set aside a foreclosure judgment or proceeding subsequent thereto is subject to an abuse of discretion standard." United States ex rel. U.S. Dep't of Agric. v. Scurry, 193 N.J. 492, 502 (2008). An "abuse of discretion only arises on demonstration of 'manifest error or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "'decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Scurry, 193 N.J. at 504 (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

In accordance with Rule 4:64-8, the administrative dismissal for lack of prosecution was without prejudice. Reinstatement is permitted "only on motion for good cause shown." R. 4:64-8. Rule 4:64-8 "follows [Rule] 1:13-7." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:64-8 (2020). Similar to the analysis under Rule 1:13-7, "reinstatement is ordinarily routinely and freely granted when plaintiff has cured the problem that led to the dismissal even if the application is made many months later." Ghandi v. Cespedes, 390 N.J. Super. 193, 196 (App. Div. 2007) (internal quotation omitted). "[A]bsent

15

a finding of fault by the plaintiff and prejudice to the defendant, a motion to restore under the rule should be viewed with great liberality." Id. at 197.

The court acknowledged that plaintiff "had a significant and unexplained delay in moving this matter forward," but stated that "defendant's default occurred more than ten years ago and plaintiff is now in a position to make application for final judgment," and "[d]enying plaintiff the relief it requests would be inequitable under these circumstances." The court did not abuse its discretion in reinstating the complaint as defendant was not prejudiced by the delay. Defendant had exclusive possession of the mortgaged premises during the litigation without paying plaintiff as required under the note. Under the circumstances, there was no principled reason for the court to deny plaintiff's motion and require it to refile the complaint, re-serve Boscovs and New Century Financial Services, Inc., and restart the foreclosure proceedings.

V.

In sum, we conclude that the trial court properly determined that defendant's timely notice to rescind under TILA was not a bar to foreclosure, and the court did not abuse its discretion when it granted plaintiff's motion to reinstate its complaint. To the extent we have not addressed any of defendant's

16

arguments it is because we concluded they lacked sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).4201-18

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4201-18T2